Hornblower, C. J.
The auditors to whom the accounts in question had been referred, in their report, made to the term of February, 1827, among other things,, charged the accountant with the sum of six hundred and seventeen dollars and eighty-five cents for interest. The charge was made by the auditors in the following words: “ to the further sum of interest, found growing due upon moneys loaned of the estate not before credited, (by accountant,) and amounting to six hundred and seventeen dollars and eighty-five cents. The liability of the executor, under the laws and provisions of the will, subject to the opinion of the court.” This report, upon objections made and argued, before the court, was referred back to the auditors, with instructions to discriminate between interest received by the executor on the assets at large, and such as had accrued or been received by him, on certain pecuniary legacies mentioned in the will: (which legacies amounted to two thousand dollars,) and not to charge the accountant, with any interest, except such as had accrued or been received on the residue of the assets, after deducting the said legacies. In May term, 1827, the auditors reported that they were unable from any evidence, then or at any time before them, to discriminate between interest arising upon the legacies, and such as had arisen on other moneys of the deceased : and prayed to be discharged from the further consideration of the subject. Thus matters remained until February term, 1839, when the executor exhibited his accounts de novo; and the court after hearing counsel on both sides, ordered the executor to be charged with the aforesaid sum of six hundred and seventeen dollars and eighty-five cents for interest, as originally reported by the auditors. To this charge, the plaintiff in Certiorari objects : First, that there was no evidence to justify such charge: Second, that the auditors do not say in their report, that the executor received the sum of six hundred and seventeen dollars *61 and eighty-five cents, or any sum, as interest: and thirdly, that by the terms of the will, the executor was not chargeable with interest on his general account, for so much of the money of the estate as was necessary to pay the pecuniary legacies to the testator’s four children.
The first two exceptions are not sustained. It is not necessary that the auditors should find, or report, that interest had actually been received by the executor. It is sufficient if they are satisfied, that he used, or made a profit of the funds: or that he actually put the money out at interest, and might1 or ought to have received it. But in this case, the auditors do expressly state, that they “ found interest growing due upon moneys of the estate, loaned by the executor, to the amount of &c.” This was matter of fact, proper for their inquiry; and we must intend that the auditors reached this result upon legal and sufficient evidence, until the contrary is shown; which is not done. It becomes necessary therefore to inquire, whether the executor was chargeable in his general account, with any interest made by them, or which might have accrued on so much of the moneys of the estate, as were necessary to pay the legacies ? The legacies spoken of, were given by the testator in the following words: “ I order five hundred dollars to be kept in gold and silver money for each of my children, to be paid, that is to say, five hundred dollars to my son Marshall Augustus; and five hundred dollars to my son Enoch Jackson; and five hundred dollars to my daughter Emeline; and five hundred dollars to my daughter Mary Ann: to be paid and given to my four children at lawful ago or when married.” The testator then desires his executor to see well to his children in all cases, and concludes by saying: “ their money cannot be lent nor used, but must be paid to each of them as they come to lawful age as above said, and kept for that purpose.”
Hence it is argued by the plaintiff’s counsel, that these are specific legacies; that if he loaned or made any use of those moneys, he is not chargeable therefor, on his general account, but must respond to the several legatees for their respective portions ©f such interest as ho may have made upon their several legacies. The fallacy of this argument consists in supposing that these were speeifie pecuniary legacies; they were not such. If the tes *62 tator had had two thousand dollars in gold and silver in a certain bag, or drawer, and had given that specific money to his four children, to be equally divided between them; or if he had had five hundred dollars (in specie in one drawer or bag; and five hundred dollars) in another drawer or bag, &c. and had given to each of his children the gold and silver in one of them ; they would no doubt have been specific legacies; and on all questions between the executor and the legatees, subject to all the rules and principles of law applicable to such legacies. But the will of the testator in this case amounts to nothing more than a general bequest to each of his four children, of five hundred dollars payable to them at maturity or marriage, in a particular currency ; and to that end, he directs his executor to keep the same for them, in gold and silver, until they should be entitled to receive it, and not to lend it out, nor use it in the mean time. No doubt if the executor had found two thousand dollars of gold and silver on hand, or in the absence of it, had immediately converted other assets into gold and silver, to that amount, and had laid it aside for the legatees, they could not have been chargeable with interest. They might have kept it in bank or elsewhere, lying dead and useless, until the children became entitled to l’eceive it. And if they had put up each one’s portion in separate parcels, and thus kept it, until their full age, or marriage, it would have been a strict compliance, with the directions of the testator, and they could not have been charged with interest, either by the legatees or upon their general account. This however was not the fact. Whether there were two thousand dollars in specie on hand or not, does not appear; but if there were, there is no evidence that the executor ever separated that amount in.specie from the estate, and appropriated specific portions of it for the several legatees. On the contrary, the moneys that were from time to time paid to the legatees, as they came of age, constituted a part of the general fund, until they were so paid. Indeed the executors must so have considered it; for in the accounts rendered, no allowance is claimed for the amount of those legacies except when and as they were paid. Had the executors considered these gold and silver legacies as specific; or if they had actually set apart and appropriated so much specie, for the payment of them, they would ’have claimed, and been entitled to an allowance to that amount, *63 as at the date of the inventory. This was not done; the money continued to be a part of the general assets,, until paid out, and therefore all interest accrued on those assets belonged to the general fund. I am of opinion therefore, that the account as stated by the court, in this particular, is correct.
But the plaintiff has taken another exception to the account as settled by the decree of the Orphans’ Court, that seems to me more substantial. By the account as reported by the auditors, in February term, 1827, there remained in the hands of the accountant, after charging him with the aforesaid sum of six hundred and seventeen dollars and eighty-five cents for interest, a balance of one thousand and ninety-three dollars and eighty-eight cents, subject to commissions. In this way the account stood, until February term, 1839, when it was finally passed by the court, after charging the defendant with the additional sum of one thousand two hundred and thirty-six dollars for interest on the said balance of one thousand and ninety-three dollars and eighty-eight cents, from February term, 1827, up to that time; and then allowing the accountant, commissions on the aggregate amount of the estate. This I think was erroneous. The account had terminated in 1827, and the accountant was then entitled to his commissions, the amount of which he had a right to retain out of any balance then in his hands. It is true, the court have allowed the executor a very liberal commission: (fifteen per cent) and they are the sole and exclusive judges of what was proper on that subject; but it is manifest, that by charging him with interest for eleven years, on the whole balance, they are making him pay interest on his own money. The commissions at whatever sum the court thought proper to fix them, ought to have been credited to the accountant as of February term, 1827, and interest charged against h.im, only on the balance in his hands, after deducting the commissions. I am of opinion therefore, that the decree of the Orphans’ Court must be reversed on this last ground, and the record remitted to that court to be proceeded in according to law.
Ford, White and Nevius, justices, concurred.
Daytoh, J.
This Certiorari is brought to reverse a decree of the Orphans’ Court of Burlington county, upon a settlement *64 of the accounts of Maja Mathis, surviving executor of Enoch Mathis, dec.
By the will of E. Mathis, it was among other things directed, that five hundred dollars be kept in gold and silver for each of his four children, to be paid them at lawful age, or when married; and it was ordered that the said money be not lent or used &c.
In the term of February, 1826, the account of Maja Mathis, as surviving executor, was reported by the Surrogate, to the Burlington Orphans’ Court for allowance. Exceptions being filed, the same were referred to auditors, Jesse Richards, George W. Tucker and Samuel Deacon, who re-stated the same and made report to February term, 1827. On, the debit side of this account as re-stated, is the following item or memorandum :
“ To the further sum of interest found growing due upon moneys loaned of the estate, not before credited, and amounting to six hundred and seventeen dollars and eighty-five cents. The liability of the executor under the laws and provisions of the will, subject to the opinion of the court.”
At the same term to which the auditors made their report, the court after argument, referred the account back to them with directions, among other things, to charge the accountant with the interest received by him on all moneys belonging to the estate, other than the two thousand dollars, being the aggregate of the pecuniary specific legacies, as that court has called them, bequeathed as aforesaid to his children. At the May term of 1827, two of these auditors, George W. Tucker and Samuel Deacon, made report, that “ being unable to discriminate from the account exhibited at this time or heretofore, between the interest moneys arising upon the specific legacies and other moneys of the said deceased, and the other requirements of the order being therewith connected ; and request to be exonerated from the further consideration of the subject.” In this condition the account remained until February term, 1839, when it was reported de novo by the surrogate: and it was then agreed between the parties, that the question as to the liability of the executor for the said sum of six hundred and seventeen dollars and eighty-five cents, should be left to the Orphans’ Court for its decision on the papers in this cause. Said court after hearing the same, without further evidence, ordered and adjudged that he be charged therewith.
*65 The court further ordered that the executor be charged with one thousand two hundred and thirty-six dollars, being interest on the balance in his hands from February term, 1827, to February term, 1839, when the account was finally acted upon in that court; and from the aggregate amount of principal and interest, the court then deducted the commissions allowed to the executor, amounting to one thousand one hundred and seventeen dollars and three cents.
I. The counsel of the plaintiff in Certiorari contends in the first place, that the charge of the six hundred and seventeen dollars and eighty-five cents, is erroneous, inasmuch as it was interest growing due upon the legacies amounting to two thousand dollars, which it was expressly ordered by the will should not be invested ; and on which, the Orphans’ Court of Burlington county, in the term of February, 1827, directed that no interest be charged. It is agreed, be it remembered, that the question be argued on the papers as they stand ; and it certainly does not appear upon the face of those papers, with anything like clearness, from what source that interest money originated. The court evidently supposed for some reason, that at least a part thereof accrued from the two thousand dollars, and a part from some other sources. For it directed the auditors to discriminate, and they in their report, say they are unable to do so, and therefore beg to be discharged. The language of that report, (if it may be so called) of the auditors, is moreover, peculiar, and in my judgment merits consideration, though I do not remember its having been referred to by counsel. They say, “ being unable to discriminate from the account exhibited at this time or heretofore, between the interest moneys arising ” &c. How what account is here referred to ? certainly not the account reported by the surrogate or themselves. That would be sheer nonsense. It would he saying, because our own account does not discriminate, therefore we cannot. But in addition, the auditors say they cannot discriminate from the account exhibited &c. Exhibited by whom ? by the accountant, most certainly. We have then the fact, as I think, clearly shown, that this executor had kept an account of interest moneys received or growing due upon moneys loaned of the estate, but wilh so little accuracy as not to show from what source or investments that interest money became due. *66 Suppose this to be so, can it be possible that he is thus to take advantage of his own wrong, and put in his pocket, this interest money which belongs to the estate. Certainly not, the fact appeared in some way, that such an amount of interest had grown due upon moneys loaned of the estate. If the executor say, all or any portion of it, grew due upon a particular part of the estate for which he is not accountable, it is his duty to prove it ; and if he fail, he must take the consequences. It is within the principle, that he who mixes up his own funds with the moneys of others so that they cannot be distinguished, must bear the loss of his own wrongful act.
But for the sake of argument let us admit that this interest money did grow due upon the two thousand dollars in whole or in part. An admission by the way, countenanced by the fact that the liability of the executor to account therefor, was submitted to the court &c. for it is not seen how else any legal question could have been involved. Still I do not see how the executor is to be relieved from liability.
The legacy, though called specific, by the Orphans’ Court and the auditors in their report, most clearly is not so. To make a legacy specific, the will must mark out some identical thing given, as a horse or other individual thing. Ellis v. Walker, Amb. 310. Or if it be of stock, it may answer if it be described as “ my stock ” Ac. or stock “ standing in my name” Ac. Sibley v. Perry, 7 Ves. 522; if it be of money, it may be identified as money in a certain bag. But a bequest of a specified amount of some particular kind of stock, is not specific. Webster v. Hall, 8 Ves. 410; Wilson v. Brown Smith, 9 Ves. 180; nor is a bequest of ten thousand pounds, current money of Jamaica, to a.trustee, upon certain trust.; Ac. specific. Raymond, v. Brodbelt, 5 Ves. 200; and yet in what does that differ from a bequest of a specified amount in gold and silver, to be kept uninvested by the trustee. It is merely a direction as to the mode in which the money shall be kept and the currency in which it shall be paid. If the bequests now in question to the four children of the testator, had been of five hundred dollars each, of gold and silver, in a particular bag or drawer, it would have presented a different question; but as it now is, there is nothing on the face of the will to make them anything else than pecu *67 niary legacies; and it is upon the face of the will that this question must be settled. Innes v. Johnson, 4 Ves. 573. Admitting therefore, that this interest money did accrue upon the two thousand dollars, I repeat that I see nothing which can relieve the executor from accounting for it in this way. ' It is true, that the Orphans’ Court in referring this matter back to the auditors, directed them to discriminate between interest moneys accruing upon this two thousand dollars, and upon other moneys of the estate. But it was never done; the auditors reported that they could not, and the account remains as it was originally reported by them, without alteration or amendment. But had they carried out the views of the Orphans’ Court, and charged the executor with none of the interest received on this two thousand dollars, it would have been wrong beyond a doubt. The court were in an error when they directed them to do so. If the executor loaned that two thousand dollars, it is true he did so without warrant; it was a violation of his official duty, but he cannot for that reason refuse to the estate, the profits of its own moneys. Had he embarked this money or any other portion of the estate, in a hazardous speculation, it would have been without warrant and a violation of his trust, yet it is well settled that he must have accounted to the estate for the uttermost farthing, even had he made extraordinary profits. The case is directly within that wholesome and well settled rule; that a trustee shall never make profit to himself, from the trust estate. There is not therefore, any view of the case by which the executor can relieve himself’from this liability.
II. The court refused in this case to deduct the executor's commissions, until the final decree in February term, 1839.
Iu this I think there was injustice done the executor. The commissions allowed in this case are complained of as unreasonably high ; being no less than fifteen per cent. But upon the mere amount of commissions, in the absence of fraud or mistake in fact or law, I apprehend we have nothing to do. Perhaps it would be well if it were otherwise, for there is nothing connected with judicial proceedings about which there is greater uncertainty, than the subject- of commissions. No accountant can guess what he will receive, no person interested imagine what he is to pay. This want of some standard to regulate judicial dis *68 cretion is a most serious grievance to orphans’ and others, whose interests should be better protected. Perhaps from the nature of the thing, no general and arbitrary rule can be adopted with justice, to govern all cases, though perhaps sound policy might be thus best answered, see 1 Soph. 42; but something like a uniform standard might be hit upon which would govern, in ordinary cases.: or where the accountant did not show something to take himself without the general rule. This has been done elsewhere. In New York they have a statute authorizing the court of Chancery to make a reasonable allowance in such cases, and the same having been settled by the chancellor, that it be conformed to in all cases. Chancellor Kent, in the matter of Roberts, 3 J. O. R. 44, adopted the following as a reasonable compensation, and yet not so high as to inflame the cupidity of trustees, which of all things should be avoided. He allowed over and above all expenses &c: jive per cent, on all sums received and paid out, not exceeding one thousand dollars; two and a half per cent, on any excess between one thousand and five thousand dollars, and one per cent, on all above five thousand dollars. This is certainly a small, perhaps too small a compensation, to a prudent man for his trouble and responsibility. On an estate of ten thousand dollars, it would allow for commissions but two hundred dollars, and on an estate of twenty thousand dollars, but three hundred dollars over and above expenses. In South Carolina, an executor is allowed two and a half per cent, for moneys received or paid, and when he claims more, he must make out a special case, Snow v. Callum, 1 Desaus. 542, n. In Virginia, the usual commissions allowed, are jive per cent. 4 Munf. 83; 1 Wash. 246; 4 Hen. & Munf. 411. In Maryland, it is provided by the statute, that the commissions allowed shall not be under five, nor over ten per cent, on the amount of the inventory. Nichols v. Hodges, 1 Peters’ S. C. Rep. 562. In India, it is the practice to allow jive per cent. Chetham v. Audley, 4 Ves. Jun. 72. In Pennsylvania, likewise, jive per cent, appears to be the usual allowance in ordinary cases. Chief Justice Tilghman, in Pussey v. Clemson, 9 Serg. & R. 209, said that it appeared to him, after considerable research, that the common opinion and understanding of this country, had fixed upon five per cent, as a reasonable allowance. But to this rule there were exceptions. *69 There may be estates where the total amount is small, and that too eolleeted in driblets; in such, five per cent, would be insufficient. On the contrary, there are others, where the total being large, and made up of sums collected and paid away in large masses : five per cent, would be too much. He'says therefore, it must be left to courts to ascertain when the general rule should be departed from. I concur fully in these remarks of Chief Justice Tilghman, and would feel rejoiced to see some general rule adopted in t-his state. Five per cent, in ordinary cases, is enough; and where the estate exceeds some five or six thousand dollars ; it is too much, and should be gradually reduced in proportion to the size of the estate. But upon this point, I repeat, that we do not and cannot speak authoritatively ; the matter is within the jurisdiction and control of another tribunal; where, respectfully commending these observations, we leave it.
There is little light to be had on this subject from the English books. These appointments there have been considered as honorary, and no commissions whatever allowed, beyond aetnal expenses. Toller on Ex. 456 ; 2 Aik. 60; 3 P. Wms. 250; n.; 1 John. C. R. 37, 529. But it is manifestly right that a proper allowance be made, though I fear that the interests of orphans and others, are too often overlooked in complying with the unresisted and sometimes extortionate demands of executors, administrators and guardians.
In reference to the case now under consideration, we know nothing. From observations made upon the argument, it is understood there was great difficulty in the settlement of this estate; sundry lawsuits &e. which may have influenced the court to give unusually large commissions.
It is possible too, that the time when the commissions were deducted from the balance in hand, was a reason for increasing their amount. A doubt as to this, made me at first hesitate as to the propriety of any interference, but upon reflection, I am satisfied, that 1 cannot act upon that supposition. In the first place there is no evidence of it, and in the second place, the legal presumption is the other way. The statute, (section 31,) enacts, that the allowance of commissions to executors &c. shall be made with reference to their actual pains, trouble and risk in settling the estate. The presumption is, that the commissions *70 in this case were settled with a view only to those matters named in the statute.
Though not without some misgivings as to the amount of those commissions, I have concluded that they should have been deducted from the balance struck against the executor, at the term of February, A. D. 1827, and that interest should have been charged against him, only on the balance remaining after such deduction. The whole business of the estate had been done prior to that time, even to preparing and presenting his accounts for final settlement in the Orphans’ Court. Not an item has been paid out subsequent thereto. It is true it was the executor’s business to proceed until he had a final decree; but a neglect to do so, ought not to have been visited with so heavy a penalty as the loss of twelve years interest on one thousand one hundred and seventeen dollars and three cents, that being the amount of commissions subsequently allowed to him. And such is the effect of charging interest on the whole balance of the estate from February term, 1827. Had the question which was submitted to the court by the auditors, at that time, remained undetermined a few years longer, the interest upon the balance would have eaten up every dollar of the executor’s commissions, and he would have received no compensation whatever. This unusual state of things is produced by the court’s balancing the estate twelve years before the final decree. Ordinarily, the balance is struck and commissions deducted when the account is reported to the court for allowance, and this ought to have been the case here; the executor would then have received his wages when his work substantially was done. There are perhaps some peculiar cases where some allowance for commissions might rightly be made to the executor at'certain stages of an unsettled account, but those cases are rare and must depend mainly on their own circumstances. But when the account is presented to the Orphans’ Court, and the balance of the estate is struck, the commissions ought as a general rule to be deducted before interest is charged upon that balance against the accountant. There may however, exist exceptions to this general rule, though the present I do not consider one of them. There is no proof or allegation even that the executor has failed in his duty to press this matter to a final settlement through any mal purpose or intent. It appears to have *71 slept from 1827 to 1839, with the assent of all parties ; and with the assent of all parties it was then taken up upon the papers as they stood, without further proof, to be finally disposed of.
The decree must be set aside and the record remitted, that the court below may proceed therein, agreeably to the directions of the court as above laid down &c.

Deoree reversed and record remitted to be pr-ooeeded in according to law.

Cited in Stevenson’s Adm’r v. Phillips, 1 Zab. 71.