Johnson v. Conover.

---

HENRY W. JOHNSON, executor &c. of Peter P. Conover, deceased,

*v.*

HULDAH H. CONOVER et al.

1. A bequest to a wife of "the sum of eight thousand dollars invested in stocks, the interest to be paid to her during her life," is a demonstrative legacy.

2. This legacy is not a charge upon the real estate, either by reason of an equitable conversion of the realty, inasmuch as the order to sell the real estate is for the purpose of distribution and not to pay legacies; or by a gift of the residue of the real and personal property in one mass, inasmuch as the last clause of the will contains a gift of all the proceeds of the sale of the real estate.

*Messrs. Hawkins & Durand,* for the complainant.

*Mr. Frank P. McDermott,* for the residuary legatees.

*Mr. Alfred Walling,* for the executor of Margaret Conover.

REED, V. C.

This bill, although filed in the nature of a bill of interpleader, is in reality a bill by an executor to obtain a decree construing the will of his testator.

The first question propounded is whether the bequest to testator's wife of "the sum of eight thousand dollars, invested in stocks, the interest thereof to be paid to her during life," is a specific or a demonstrative legacy.

The second question is whether, if it be a general legacy, it is chargeable upon the real estate of the testator.

The facts of the case are these : Peter P. Conover died November 15th, 1890. By his will, after directing his debts and funeral expenses to be paid, he proceeded as follows :

"*Item.* I give and bequeath unto my beloved wife, Margaret, the use of all my household goods and furniture of every kind and description during her life, empowering her to distribute the said property, or any part thereof, to such of my children as she shall think proper to give the same, and in case she should die without disposing of the same, then I order the same to be sold, and the proceeds to be disposed of as hereinafter directed.

"*Item.* I give and devise to my wife, Margaret, during her life, the use of my dwelling-house and lot whereon I now live, also all my other real estate for life, empowering my executors herein named, with the consent of my wife, to sell and dispose of any part thereof, at public or private sale, as they shall esteem for the best interest of my estate, and invest the proceeds of such sale in bonds and mortgages or government securities, and pay the interest thereof to my wife during her lifetime.

"*Item.* I give and bequeath unto my beloved wife, Margaret, the sum of eight thousand dollars, invested in stocks, the interest whereof to be paid to her during life.

"*Item.* Whereas, I have, for a nominal consideration (no money being paid), conveyed to my son, John H. Conover, a house and lot in the village of Keyport, I order and direct my executors not to exact from my son John the payment of any money for said property, he having the right to dispose of the same without accounting to my estate.

"*Item.* I give and bequeath unto my wife, Margaret, the interest of all my personal property not hereinbefore mentioned, during her lifetime for her maintenance and support.

"*Item.* After the decease of my wife, Margaret, I order and direct that all my real estate not disposed of in the lifetime of my wife, be sold by the surviving executor of my estate, and that with proceeds of sale, together with my personal property, he make distribution equally among all my children and my grandchild, Peter Frismuth (excepting my son John), share and share alike, and in event of the death of any of my said children without lawful issue, then I bequeath said share to my children then living, share and share alike.

"*Item.* I hereby empower my wife, if she so elect, to devise the sum of eight thousand dollars, the interest whereof I have before directed to be paid to her."

The widow, Margaret Conover, died October 1st, 1893. She left a will, from which is extracted the following clause:

"*Second.* Whereas, my late husband, Peter P. Conover, in and by his last will and testament, having given and bequeathed to me the interest and income of the sum of eight thousand dollars, and having also, in and by his said last will and testament, empowered me to bequeath and devise the said sum of eight thousand dollars, in words as follows:

"*Item.* I hereby empower my wife, if she so elect, to devise the sum of eight thousand dollars, the interest whereof I have before directed to be paid to her.

"Now, therefore, having elected and hereby electing to exercise the said power conferred upon me by said last will and testament of my said husband, I do hereby exercise such power, and in pursuance thereof do dispose of said sum of eight thousand dollars, as follows:

"I give, bequeath and devise the same unto my daughter, Miss Huldah Conover, and in case of the death of my said daughter before me, I do in that event give, bequeath and devise said sum of eight thousand dollars in equal shares to my two sons, William L. and Elias H. Conover. And I do hereby empower and direct the surviving executor or the legal personal representative of my said husband to pay over and dispose of said sum of eight thousand dollars to the persons to whom I have given, bequeathed and devised the same as aforesaid."

She appointed Alfred Walling as her executor.

The will of Peter P. Conover, already mentioned, was executed June 6th, 1878. At that time he seems to have had money invested in stocks. He had fifty shares of Pittsburg, Fort Wayne and Chicago preferred stock of the par value of $100 per share. For this stock he had paid $4,500 in 1868 or 1869, but at the time of the execution of the will it was worth, in the market, $5,000.

He also had at this time, three seven-per-cent. bonds of the Cincinnati, Richmond and Fort Wayne railroad, par value $1,000 each; the market value, in 1878, of this was $700 per share. It is probable, but not certain, that he had no other stocks.

Whether he had any personal property aside from this stock and these bonds, in 1878, does not appear in the testimony. It does appear that, at the time of his death, his personal estate did not amount to $8,000. He died seized of real estate worth upwards of $15,000, all of which he had owned from the time of the execution of his will. The value of his real estate at the time he made his will is estimated at $25,000 to $30,000.

Testator sold the fifty shares of railroad stocks, in May, 1888, for $7,000.

In addition to the testimony taken before the master to show these facts, there was also testimony introduced for the purpose of showing that a part of the testator's estate had come to him through relatives of his wife. Elias Conover, son of the testator, testified that he heard a conversation between his father and his mother more than nineteen years ago. His father, he says, handed his mother a paper and said:

"'Mother, there is the paper that I promised you;' she took it, looked at it and said, 'It should have been for $2,000 more'—that it was $6,000 she got by her father; the $2,000 she got from her brother, her mother and her aunt; father said he had no recollection of anything of that kind, about the $2,000; she kept this paper for $6,000."

This testimony was objected to as incompetent and immaterial. It was material for the purpose of showing an admission on the part of the testator that he recognized his wife's claim against him, of some kind, for at least $6,000, and therefore as displaying the relations existing between him and his wife in respect to the property at the time he made his will. But it was delivered by Elias Conover, a party to the suit, a son of the testator and a residuary legatee under the will of his father. His share of the estate, and therefore his claim against the executors, will be affected by the decision of the question at issue in the suit.

The executor, it is true, was sworn, but his testimony does not clearly appear to have been in respect to transactions with, or conversations by, the testator. So I think the testimony of Elias was incompetent. *Burnett* v. *Smith, 8 Stew. Eq. 314.*

The first question, as already observed, is whether the bequest of the $8,000, contained in the third clause of Peter P. Conover's will, is a specific or a demonstrative legacy. The importance of this question arises out of the fact that the testator during his life converted the stocks mentioned in that clause, so that at his death they were non-existent as a part of his estate.

One of the attributes of a specific, as distinguished from a general legacy, or from a demonstrative legacy, is that if the property given *in specie* does not exist at the death of the testator, there is nothing upon which the gift can take effect, and the legacy is necessarily lost.

A general legacy is payable out of any personalty, or, if properly charged, out of the real estate of the deceased. In this respect a demonstrative legacy has the quality of a general legacy. It differs from a specific legacy in this respect, that the former bequeaths certain property *in specie*, while the latter gives generally a sum of money to be primarily raised out of certain specified property.

If there is none of the property existing out of which it is to be raised, it becomes a general legacy, payable out of the general estate. If a part of the property is existing, but such part is insufficient to pay all of the demonstrative legacy, the remainder becomes a general legacy. So it is never adeemed by the non-existence of the specific property out of which it is directed to be raised.

If, therefore, the gift in question is demonstrative, *i. e.*, of a sum of $1,000 to be raised out of stocks, then the stocks not being in existence at the time of Conover's death, it is a general legacy, payable out of his estate as such. If, however, the gift was of the stock *in specie*, nothing passed to his widow for her disposition by will. On account of this liability to extinguishment, contrary to the intention of the testator, by the destruction or conversion of the property specifically given, the tendency of

22

courts is to lean towards such a construction of the will as will make the. bequest general or demonstrative rather than specific. *Norris et al.* v. *Executors of Thompson et al., 1 C. E. Gr. 218.*

The language employed by the testator, in making the bequest now in question, brings it within a much-discussed class of cases. Of all the nice distinctions which have been drawn in arriving at testamentary intent, there are none finer than those which have been evolved by cases of gifts of money or of a sum of money, coupled with the words "invested in securities," or "in stocks," or "in shares," or "in bonds."

Slight indications in other parts of the will are relied upon to discover whether, by the use of such language, the testator meant to give the stocks, or securities, or bonds, or shares *in specie,* or whether he merely meant to give a sum of money which happened to be invested in such stocks or bonds, or was to be so . invested, and so meant to indicate that the sum of money given was to be paid out of such securities. Perhaps the most cited case, in the English court of chancery, is *Mytton* v. *Mytton, L. R. 19 Eq. Cas. 30.* A testatrix, having £3,000 East India debenture bonds, gave a legacy to her executors, in trust, to pay to her. nephew, "the sum of £3,000 invested in Indian securities." Vice-Chancellor Malins held this to be a demonstrative and not a specific legacy. In the subsequent case of *Page* v. *Young, L. R. 19 Eq. Cas. 501,* there was a bequest to "my dear sister" of the interest of £4,500 in the funds for her absolute use and benefit. This bequest was followed by specific gifts to the same legatee, then followed the words "at her death to M. A. H., the funded property to H. Y." The same vice-chancellor who had decided *Mytton* v. *Mytton* held that this bequest was specific, because, looking at the situation of the testatrix, he was of the opinion that she intended to mean "my money that is now in the funds."

The last reported case decided by the English equity courts, of which I am informed, is that of *Pratt* v. *Pratt, L. R. Ch. 491 (1894).* The bequest in this case was of £800, invested in two and a half consols. Judge North, after a review of many cases, held that this was a specific bequest of the consols. He admits

that the only point of difference between this bequest and the one in *Mytton* v. *Mytton, supra,* consists in the fact that in the former the testator gives "the sum of £3,000," while in the latter he gives, not the sum of, but simply £800. He seems to think that there is a distinction between the gift of "the sum of £—— invested in securities" and of "£—— invested in securities."

In *Giddings' Executors* v. *Seward et ux., 16 N. Y. 365,* the bequest was "of the sum of $1,200 and interest on the same contained in a bond and mortgage." There was a subsequent provision that the sum was given to the legatee for life, with a limitation over. The New York court of appeals held this to be a demonstrative legacy. Judge Selden says: "The form of expression is not one that would naturally be chosen to manifest an intention to make a specific bequest of the bond and mortgage itself. The leading subject of the gift is not the bond and mortgage, but the sum of money mentioned."

Little assistance in arriving at testamentary intention in this respect is to be obtained from an examination of the cases in detail. Such an examination would show that, in determining whether, by the use of this formula, the testator means to give the sum of money or to give the specific stock or share or bond in which it is invested, every expression in the will is scanned to arrive at the intention of the testator. When there cannot be found any particular language which can be pressed into use for this purpose, then the courts seem to go upon the ground that the testator is presumed to have intended to make a sensible and equitable disposition of his property, and if the bequest is to a person so related to the testator that the ademption of the gift could not have been anticipated by the testator, then the bequest will be held to be general, to save it from extinction. This seems to have been the ground upon which *Mytton* v. *Mytton, supra,* and *Page* v. *Young, supra,* were decided.

If, in the present case, there were no testimony exhibiting the character of the property owned by the testator at the date of the execution of his will, I think it would be clearly inferable that the testator, in using the quoted language, meant $8,000

which was to be invested in stocks. This would undoubtedly fix upon the gift the character of a general and not of a specific legacy. The fact disclosed in the testimony upon which an argument in favor of regarding it as a specific gift of the stocks, is that it seems almost certain that, at the time of executing the will, the testator held stock and bonds of the nominal value of $8,000 ; therefore, it can be argued, he must have meant to give the sum of $8,000 then invested in stock. If he had used the form of expression, " now invested in stocks," it would, according to Vice-Chancellor Malins, in *Page* v. *Young,* have implied a specific bequest. In *Robinson* v. *Addison, 2 Beav. 515,* however, the testator owned fifteen and a half shares of the Leeds and Liverpool Canal Company. He gave in trust to one legatee five and a half shares in the Leeds and Liverpool Canal Company, to another five shares, and to still another five shares. The bequest, it is perceived, was of the exact number of shares owned by the testator at the time of the execution of the will, and yet it was held to be a general legacy. The master of the rolls remarked, " there is no description or reference to show that he meant the particular shares which he had at the date of the will."

Looking at the form of words employed in making the present bequest and at the whole face of the will, it is difficult to say whether the testator meant to give absolutely the sum of $8,000 or to give the stocks and bonds of the nominal value of $8,000. It is to be remarked, however, that if he had intended to make a specific gift of the stock and the bonds, it would have been easy for him to have given them by name. But, by employing the words " the sum of $8,000," in the first clause, and by repeating it in the succeeding clause, he has left it doubtful whether his intention was not to give the sum of $8,000, which happened at that time to be invested in what he termed " stocks." It is probable that he had no notion that, in case of the fluctuation in the value of stocks, or from any reason, it should become politic to change these securities, the gift would thereby become extinguished. I shall therefore lean towards that construction which prevents ademption, and hold this to be a demonstrative legacy.

The next question to be resolved is whether this legacy is a charge upon the real estate of the testator. If so, it must be charged by express words or by necessary implication.

There are no express words charging it upon the land. But it is claimed that there are several features in the will which display an intention that the legacy shall be paid out of the realty in default of sufficient personal property. It is insisted that the will provides for an equitable conversion, by which the realty becomes personalty for all the purposes of the will, including the payment of this legacy.

In scanning the will, it will be perceived that the testator confers upon his executors the power to sell, during the life of his widow and with her consent, any part of his real estate. This, however, is not a conversion, for the power to sell is a discretionary one, and not a direction to sell. Then there is a further power given. After the death of the widow, the executors are ordered to sell the real estate and distribute the proceeds to certain persons in certain proportions. This is a peremptory order to sell. But it is apparent that this direction to sell upon the arrival of the period for distributing the estate, is only for the purpose of distribution. Now, no rule is more entirely settled than that a conversion, directed to be made for a particular purpose, transmutes the character of the property only so far as is necessary to effectuate that purpose. If it is for the purpose of paying legacies, it will not throw open the fund to simple contract creditors. *2 Jarm. Wills 217.*

But it is said that the object of this conversion is for all the purposes of administration. In support of this the case of *Smith's Executrix* v. *First Presbyterian Church of Bloomsbury, 11 C. E. Gr. 132,* is cited. That case, however, is dissimilar in its features from this. There are several particulars in which it differs, and upon these particular features the chancellor relied in holding that the testator intended, in that case, an out-and-out conversion for all the purposes of the will. From the will, taken together with the testimony in that case, the chancellor found that it was apparent to the testator, at the time he made his will, that his personalty was entirely inadequate to pay his debts and legacies.

Again, the testator directed a part of his realty to be sold, and, out of the price, that all debts should be "first paid." This was held to import that legacies should be subsequently paid out of the same fund. Again, the testator expressed an intention to dispose of his whole property, while, in fact, if the proceeds of the land were not applicable to the payment of the legacies, it was not disposed of at all by the will. Now, none of these features appear in the present instance. It does not appear that the testator knew that his personalty was insufficient to pay his debts as well as this legacy. Again, there is no clause ordering his debts to be paid, first or last, out of the proceeds of any real estate. Again, it does not appear that the testator knew that he would die intestate, if this legacy was not paid out of the proceeds of his realty. All the features, therefore, which were relied upon in the preceding case, as the ground of decision, are absent from this. It may be remarked, also, that the clause providing for the sale of land and distribution of proceeds is the same as that found in the will construed in *Leigh* v. *Savidge, 1 McCart. 125.* The question in that case was whether certain legacies were chargeable upon the land. It was held that they were, but the direction for sale and the division of the proceeds, was not even advanced as a ground for reaching that result. It seems to me that the sale of the real estate made during the life of the widow, under the discretionary power, as well as the sale ordered to be made at her death, were for purposes other than the payment of this legacy.

But it is insisted that, at least, the proceeds of the sale of real estate made during the life of the widow, with her consent, must be regarded as personalty, otherwise the testator died intestate as to the proceeds of such sale, and that if it be regarded as personalty at all, it is applicable to the payment of this legacy.

As already stated, the testator did empower his executor to sell any of his real estate, with the consent of the widow during her life, and to invest the proceeds thereof, and to pay her the interest arising from the same during her life. This power was so far executed that there appears to have been sold during this period enough of the real estate to realize the sum of $2,250.

If this sum is to be regarded as real estate for all purposes, then in respect to it the testator undoubtedly died intestate. This appears from the last clause of the will, in which he orders his real estate to be sold after the death of his widow, and the proceeds of such sale, together with his personal property, to be distributed. All that was to be distributed, therefore, of his real estate, under this clause, was such as was sold subsequent to the death of the widow. The real estate, which produced the $2,250, having been sold before the death of the widow, these proceeds were unaffected by this clause, unless the testator regarded it as personalty for the purpose of distribution, after his widow's death, as well as for the purpose of investment during her life. In my judgment, this was his intention. He regarded any money, or evidence of debt existing at the arrival of the period of distribution, whether derived from the previous sale of realty or not, as personal property for the purpose of distribution. If this was his intention, then he did not die intestate of any portion of his estate.

But if this view is erroneous, still there is absolutely nothing to show that he expected that any property sold during the life of his widow would be required to pay this legacy, and that by such application intestacy would be prevented. So I conclude there was no conversion of the property, except for the purpose mentioned, which purpose did not include the payment of this legacy.

But the appointee of the widow invokes another rule of construction, which, it is claimed, charges this legacy upon the land. This doctrine is known as the rule in *Greville* v. *Brown*, adopted by the court of appeals in the case of *Corwine* v. *Corwine, 9 C. E. Gr. 579,* and followed and explained in *Johnson* v. *Poulson, 5 Stew. Eq. 390.* This doctrine is, that where legacies are given generally, and the residue of the real and personal property is afterwards given in one mass, the legacies are a charge upon the residuary, real as well as personal property.

But there is no blending of a residue of real or personal property in this will—the whole proceeds of the real estate are given in the last clause.

I will advise a decree, therefore, that the sum of $8,000 was given as a demonstrative legacy, but that it was not chargeable upon the real estate of the testator.