19 N.J. Super. 195 (1952)
88 A.2d 264
IONA M. BUSCH, INDIVIDUALLY AND AS EXECUTRIX AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF LILLIAN W. SEIDEL, DECEASED, AND JOSEPH W. WELLS, WILLIAM L. LOVETT, VIOLET LOVETT, ARTHUR LEIGH, VIOLET LOVETT AND ELLEN LEIGH CARTLIDGE, AS EXECUTRICES OF THE ESTATE OF ARTHUR H. LEIGH, DECEASED, ELLEN LEIGH CARTLIDGE, WILLIAM L. LEIGH, JESSE SLINGLUFF, JR., EXECUTOR OF THE ESTATE OF ANNIE C. ROSS, DECEASED, JAMES STUCKEY, MAUD SEIDEL, MARIA LEWIS, LILLIAN EMILY WELLS HILL, PATRICIA ANNA WELLS, A MINOR, BY JOSEPH W. WELLS, GUARDIAN AD LITEM, HARRY FORT BUSCH AND HARRY L. WELLS, PLAINTIFFS,
v.
LOUISE PLEWS, LILLIAN WELZEL, VERA WELZEL GENTSCH AND LIBERTY TITLE AND TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF PENNSYLVANIA, ANNA WELLS, MARY WELLS, CHILDREN'S SEASHORE HOUSE FUND CLUB, AND FRANK P. WELLS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 18, 1952.
*199 Mr. Augustine A. Repetto, for plaintiffs (Messrs. Bolte & Repetto, attorneys).
Mr. Joseph J. Summerill, Jr., for defendant Liberty Title & Trust Company (Messrs. Starr, Summerill & Davis, attorneys), and Mr. Allen B. Endicott, Jr. (Messrs. Endicott, Dowling & Endicott, attorneys), of counsel.
Mr. Wm. Elmer Brown, Jr., for defendant Louise Plews.
*200 Mr. John Lloyd, Jr., for defendant Children's Seashore House Fund Club (Messrs. Lloyd & Horn, attorneys).
Mr. Albert N. Shahadi, for defendants Anna Wells, Frank P. Wells and Mary Wells, by her guardian ad litem, Frank P. Wells.
HANEMAN, J.S.C.
This suit seeks the construction of certain provisions of the last will and testament of Gustavus C. Seidel, deceased.
Said Gustavus C. Seidel died a resident of Atlantic City, New Jersey, on September 23, 1922, leaving a last will and testament, which was probated by the Surrogate of Atlantic County. The said last will provided, in part, as follows:
"Third. I give and bequeath to the Liberty Title and Trust Company, its successors and assigns the sum of Two Hundred and Fifty Thousand Dollars in trust nevertheless for the following uses and purposes, namely; to invest and reinvest the same, changing said securities according to their best judgment and to collect the rents, issues and profits thereof and after the payment of necessary charges and expenses to pay the net income thereof quarterly to my wife Lillian W. Seidel, in quarterly instalments, for and during all the term of her natural life. At and immediately upon the decease of my said wife Lillian W. Seidel I direct that the sum of One Hundred and Fifty Thousand Dollars shall be paid by my said Trustee to such person or persons and for such trusts as my said wife shall by her last will and testament direct and provide, and the remaining One Hundred Thousand Dollars I direct shall go to and become a part of my residuary estate to be paid to and distributed among the same persons as are entitled to my said residuary estate under the provisions of this will."
"Twentieth. All the rest, residue and remainder of my estate, of whatsoever the same may consist and wheresoever situate, whether real, personal or mixed, I give, devise and bequeath unto my nieces, Louise Plews, Lilliam Welzel and Vera Welzel in equal shares absolutely, their heirs and assigns."
The executors of the estate of Gustavus C. Seidel filed a final account on July 3, 1923. Thereafter, the trust as provided for in paragraph Third of the will was actually set up with assets of $250,000, less a deduction in the sum of *201 $2,968.68 for the payment of inheritance taxes. On May 27, 1932, the trustee filed an account showing a net corpus balance in said trust in the amount of $432,373.81.
At the time of the filing of its second and final account the trustee charged itself with corpus in the amount of $224,799.75. Exceptions were filed to said account, which resulted in a number of surcharges, causing an increase in the corpus of said trust to over $338,000 on May 14, 1951. In addition, the trustee was surcharged for income, which was for the amount thereof actually received by it on investments, but in no event at a rate of simple interest less than four per cent per annum on each of the investments. The trustee was so liable not only for the period during which it held said investments, but also until restoration of the principal was made on each surcharged investment. This resulted in a substantial income fund. See Liberty Title & Trust Co. v. Plews, 142 N.J. Eq. 493 (Ch. 1948), modified, 6 N.J. Super. 196 (App. Div. 1950), further modified, 6 N.J. 28 (1950).
Lillian W. Seidel, the above named life tenant, died a resident of Atlantic City, New Jersey, on May 14, 1944, leaving a last will and testament. Said Lillian W. Seidel, by her last will and testament and codicil, provided, in part, as follows:
"Second: In accordance with the power given by the Third Clause of the Will of my late husband, Gustavus C. Seidel, dated August 3, 1920, I direct and provide that the portion of said trust which comes under my power of appointment shall be distributed as follows:
(a) I direct said Trustee to pay unto my nephews Frank P. Wells, Joseph W. Wells and Harry L. Wells, their heirs and assigns, the sum of Five Thousand Dollars each."
There follows 12 separate items making provision for various legacies under the power of appointment.
"SIXTH: All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, I give, devise and bequeath unto my sister Mary A. McCauley and my neice Iona M. Busch, in equal shares. In the event that my said sister Mary A. McCauley is *202 not living at the time of my death, I direct that my entire residuary estate shall go as herein provided to my niece Iona M. Busch."
"Codicil to Will of Lillian W. Seidel.
I, Lillian W. Seidel, the within named testatrix, do hereby make and publish this codicil to my last will and testament bearing date the 22nd day of September A.D. 1938, in the manner following, to wit:
ITEM: I do hereby revoke the bequest of Five Thousand Dollars ($5,000.00) in item (a) of the SECOND PARAGRAPH of my will to Frank P. Wells, and direct the said sum shall become part of my residuary estate."
As stipulated, the questions which are propounded for the court's determination are as follows:
1. Are those designated remaindermen in Paragraph Third restricted to a participation in the corpus of the trust fund to the extent of $250,000 only, or may they participate in the increase or accretion to the trust fund arising by way of increase in the value of the corpus and corpus surcharge?
2. To what extent are the remaindermen entitled to interest or income on the corpus since the death of the life tenant?
3. Did Lillian W. Seidel properly exercise the power granted to her in paragraph Third of the will of Gustavus C. Seidel by the revocation of the bequest to Frank P. Wells in her will, and a direction that said sum should become a part of her residuary estate?
1.
Are those designated remaindermen in paragraph Third restricted to a participation in the corpus of the trust fund to the extent of $250,000 only, or may they participate in the increase or accretion to the trust fund arising by way of increase in the value of the corpus and corpus surcharge?
The plaintiffs contend that the bequests of the remainder are specific bequests and hence carry with them not only the designated $150,000 or $100,000, respectively, but carry with them as well the accretions of or additions to said corpus. *203 In fact, they contend that the bequests being specific, plaintiffs are entitled to $150,000 and three-fifths of any amount in excess of $250,000, and that the defendant residuary legatees of Gustavus C. Seidel are entitled to $100,000 and two-fifths of any amount in excess of $250,000.
The defendant residuary legatees of Gustavus C. Seidel, on the other hand, contend that the language "* * * the remaining One Hundred Thousand Dollars I direct shall go to and become part of my residuary estate * * *" signified testator's intention to bequeath to them not only $100,000 but also any excess over and above that sum. For this interpretation they argue that after the direction of the payment of $150,000 to the appointees of Lillian W. Seidel, the use of the word "remaining" clearly manifested such an intent. The defendants further argue, in the alternative, that if the sum over and above $250,000 is not so disposed of, it must pass by the residuary clause of said will. The solution of this question involves the intention of Gustavus C. Seidel.
It is elementary that the intent of the testator must be determined from "the four corners of the will." Shannon v. Ryan, 91 N.J. Eq. 491 (E. & A. 1920); Fink v. Harder, 111 N.J. Eq. 439 (E. & A. 1932); Central Hanover Bank & Trust Co. v. Bruns, 16 N.J. Super. 199 (Ch. Div. 1951). The testator's intent must be determined by his own language, not by what the court would have him say. First National Bank of Toms River v. Levy, 123 N.J. Eq. 21 (Ch. 1938). The duty of the court is to construe the will as written, in the light of the circumstances at the date of its execution, and not to surmise or guess what the testator would have done had he foreseen what would happen after his death and then try to give effect to his supposed wishes. It is not so much what he intended as what he did in fact do, unless the plain intent is contrary to the fact. We may not guess at his intent, but must find it in the language of the will. Blanchard v. Blanchard, 116 N.J. Eq. 435 (Ch. 1934), affirmed 122 N.J. Eq. 372 (E. & A. 1937). The intention is to be determined not from that which existed subjectively *204 in the mind of the testator, but that which is expressed objectively in the language of the will. The court may not make a new will. Morristown Trust Co. v. Work, 139 N.J. Eq. 497 (Ch. 1947); Guaranty Trust Co. of N.Y. v. First National, &c., of Morristown, 8 N.J. 112 (1951); Woodruff v. White, 78 N.J. Eq. 410 (Ch. 1911), affirmed 79 N.J. Eq. 225 (E. & A. 1911).
The first problem for consideration under this heading is whether the bequest to the remaindermen is specific, general or demonstrative.
In Norris v. Executor of Thomson, 16 N.J. Eq. 218 (Ch. 1863), reversed on other grounds, 16 N.J. Eq. 542 (E. & A. 1863), the court said as follows:
"The construction of the will is in no wise affected by the fact that the estate of the testator was given to trustees for the purposes of his will. This incident will be found in many of the reported cases, but it is never relied upon, or even adverted to, as of any significance upon the question of construction. The nature of the legacy, whether general or specific, will be found always to depend upon the terms of the gift to the legatee, without reference to the circumstance whether the estate was, or was not, put in trust."
The distinction between a general legacy and a specific legacy is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing or things, while the latter are gifts of particular specified things or the proceeds of a sale of such things, or of a specific fund or a portion thereof. In re Low, 103 N.J. Eq. 435 (Prerog. 1928); Johnson v. Conover, 54 N.J. Eq. 333 (Ch. 1896), affirmed 55 N.J. Eq. 592 (E. & A. 1897); Zorner v. Foth, 124 N.J. Eq. 508 (Ch. 1938); Rowe v. Rowe, 113 N.J. Eq. 344 (Ch. 1933); Kearns v. Kearns, 77 N.J. Eq. 453 (Ch. 1910); 57 Am. Jur. 936.
A demonstrative legacy partakes of the nature of both a general and a specific legacy and is a gift of money or property payable out of or charged on a particular fund or other property in such a way as not to amount to a gift of the corpus of said fund or property charged, nor to evince *205 an intent to relieve the general estate from liability in case of the failure of such fund or property. 57 Am. Jur. 937; In re Low, supra; Quill v. Schlichter, 121 N.J. Eq. 149 (Ch. 1936).
A testator must have had in contemplation as the subject of a legacy a specific identical thing, and none other, in order to render a bequest specific. Failing such an intention, a legacy will be deemed either general or demonstrative, depending upon whether a fund or particular property is indicated as the primary source of its payment. Camden Trust Co. v. Cramer, 136 N.J. Eq. 261 (E. & A. 1944).
A determination of whether a bequest is general or specific is one of intention to be gathered from the words employed to express the testamentary purpose, considered in relation to the instrument as a whole, and the attendant circumstances. Camden Trust Co. v. Cramer, supra; Zorner v. Foth, supra.
A clear intention must appear to make a legacy specific. Courts are disposed to consider a legacy general or demonstrative if the will admits of such construction. Patanska v. Kuznia, 102 N.J. Eq. 408 (Ch. 1928), affirmed 104 N.J. Eq. 204 (E. & A. 1929).
The test to be applied is not a technical arbitrary rule to be answered only by the use of particular words and expressions, but is an embodiment of the general principles by which the character of legacies should be tested and determined, each will resting, for correct construction, upon the language employed and established surrounding significant circumstances, if such exist. Moore's Ex'r. v. Moore, 50 N.J. Eq. 554 (Ch. 1892).
If the property given in specie is not in existence at the death of the testator, a specific legacy fails, since there is nothing upon which the gift can take effect. Johnson v. Conover, supra.
Specific legacies carry with them the profits or accretions that may accrue after the death of the testator. 116 A.L.R. 1130, 57 Am. Jur. 1107; Allen v. Allen, 76 *206 N.J. Eq. 245 (Ch. 1909); In re Low, 103 N.J. Eq. 435 (Prerog. 1928).
General legacies, once the fund has been set aside specifically by an executor, are as well entitled to the accretions. Mathis v. Mathis, 18 N.J.L. 59 (Sup. Ct. 1840); Norris v. Thomson, 16 N.J. Eq. 542 (E. & A. 1863).
Once the trust fund has been set up where, as here provided and directed by the testator, there is nothing in the will that requires or permits the other assets of the estate to be used to maintain the fund at the valuation of $250,000, the fund must, after creation, stand on its own feet and no further recourse may be had to the other assets of the estate. Morrison v. Reed, 6 N.J. Super. 598 (Ch. Div. 1950); Blanchard v. Blanchard, 116 N.J. Eq. 435 (Ch. 1934).
Using the foregoing as a guide, it seems clear that under the testator's will the original bequest to the Liberty Title & Trust Company of $250,000 in trust, to pay the income to Lillian W. Seidel for life, was a general bequest. The bequest of the remainder to the named persons, however, was specific, since the remaindermen were restricted or relegated to a specific fund set up by the testator for the satisfaction or payment of their respective legacies.
The fund, having been set aside by the executors in compliance with the terms of the will, must stand on its own feet. No further recourse may be had to any other assets of the estate in the event of a depreciation of corpus. This fund was the sole source for payment of their bequests. In the event that there had been less than $250,000 in said fund at the death of Lillian W. Seidel, they could have had no recourse to any of the other assets of testator's estate. As a matter of fact, an order of distribution was entered on September 26, 1923, distributing all of the general assets of said estate in accordance with the terms of said will, leaving only this fund in the hands of the trustee to be distributed by it. Insofar as the remaindermen are concerned, therefore, this is a specific bequest referring to a particular fund out of which their legacies must be satisfied. *207 The bequests are neither general nor demonstrative, since the testator has clearly evinced an intent to relieve his general estate from any liability in the event there is a whole or partial failure of said fund.
That the testator himself considered this a particular fund out of which the remaindermen must be satisfied is to be seen from the very phraseology of paragraph Third, where, after making provision for the payment of $150,000 to appointees of Lillian W. Seidel, the testator provided "the remaining One Hundred Thousand Dollars." This exhibited not only that the legatees were restricted to that fund alone, but demonstrated as well a contemplation on his part that the entire fund was to be exhausted, or disposed of, by the provision for the remaindermen.
Defendants' argument that the words "remaining One Hundred Thousand Dollars" connoted an intention to bequeath not only the $100,000 specifically mentioned, but also all sums over $150,000, is not logical. The word "remaining" clearly limits the defendants' interest in said fund by a specific bequest to that amount. Had the testator intended otherwise the words "One Hundred Thousand Dollars" were surplusage. Actually, the phraseology leads to the contrary conclusion. Testator's intent to dispose of the entire $250,000 and all additions and accretions, by way of specific bequest, is further demonstrated when it is observed that the persons taking the $100,000 are testator's residuary legatees and hence the identical persons who would take were the conclusion that testator had not disposed of any surplus over $250,000. Had testator intended such a result he did an unnecessary thing in inserting the words "One Hundred Thousand Dollars" in that bequest of the remainder. He would then have provided merely that the balance after the payment of the $150,000 should become part of his residuary estate.
Accordingly, it is here held that Lillian W. Seidel was given a power of appointment over $150,000 and three-fifths of the surplus of the trust corpus over $250,000, and *208 that the residuary legatees of Gustavus C. Seidel are vested with $100,000 and two-fifths of the surplus of the trust corpus over $250,000.
2.
To what extent are the remaindermen entitled to interest or income on the corpus since the death of the life tenant?
In view of what has been said above to the effect that the bequest here involved is a specific bequest, it follows that the income actually earned since the death of Lillian W. Seidel accrues to the benefit of the respective legatees in the same proportion in which they share the corpus of said trust fund, i.e., three-fifths to the appointees of Lillian W. Seidel and two-fifths to the residuary legatees of Gustavus C. Seidel. See cases cited above.
3.
Did Lillian W. Seidel properly exercise the power granted to her in paragraph Third of the will of Gustavus C. Seidel by the revocation of the bequest to Frank P. Wells in her will, and a direction that said sum should become a part of her residuary estate?
Defendants here argue that Lillian W. Seidel had no power to distribute any portion of her bequest to her own estate to be distributed as her own property under the terms of her will. The language of the will of Gustavus C. Seidel in this connection is as follows: "* * * be paid * * * to such person or persons and for such trusts as my wife shall by her last will and testament direct and provide * * *." The power thereby granted is not limited, but general and unlimited. Hood v. Francis, 137 N.J. Eq. 200 (Ch. 1945).
Whether a donee of a power duly executed said power depends upon the intention of the donee as gathered from *209 the terms of the will. Paul v. Paul, 99 N.J. Eq. 498 (Ch. 1926); Hood v. Francis, supra; Board of Home Missions v. Saltmer, 125 N.J. Eq. 33 (Ch. 1939).
Clearly, Lillian W. Seidel demonstrated her intent to exercise the power of appointment by the bequest to Frank P. Wells originally contained in her will. Implicit in the codicil revoking the bequest to Frank P. Wells and bequeathing the same to her residuary estate is a re-exercise of said power of appointment.
Defendants further assert that the provision contained in the codicil bequeathing the said $5,000 originally bequeathed to Frank P. Wells to "become part of my residuary estate" does not demonstrate an intention to exercise the power of appointment over the estate of Gustavus C. Seidel, but rather exhibits an intent to bequeath from her own estate. "It is not necessary that the power should be referred to in the instrument to effect an execution, where the intent is otherwise manifested, it being sufficient if the power exists and is intended to be executed." Board of Home Missions v. Saltmer, supra.
It seems clear that Lillian W. Seidel intended to exercise the power of appointment to the extent of the $5,000 by the bequest to Frank P. Wells and by her codicil exercised said power to bequeath said sum, in lieu of the bequest to Frank P. Wells, to her residuary legatees.
It is therefore here held that the said Lillian W. Seidel properly exercised her power of appointment in the $5,000 here questioned.
Judgment will be entered accordingly.