In the matter of the account of JOHN WOLFE, administrator *pendente ·lite* of the estate of Joseph L. Lewis, deceased.

The provisions of the statute on the subject of commissions of administrators, executors &c., and the duty of the court thereunder, considered. The fees of the administrator of a very large estate fixed and the reasons stated. Allowance for the compensation of an accountant employed by the administrator to keep and make up his account, refused.

---

*Mr. R. Gilchrist* and *Mr. C. Parker*, for the administrator.

*Mr. A. Q. Keasbey*, for the United States, principal legatee.

*Mr. Russell*, of New York, for contestants of ·will.

THE ORDINARY.

The subject of the allowance to be made to the administrator *pendente lite* of Joseph L. Lewis, deceased, for commissions, counsel fees to his counsel, and compensation to the accountant employed by him, is presented after full debate. The adminis-

trator was appointed March 31st, 1877, and the will having been admitted to probate, he turned over the estate to the executors (of whom he is one) in or about June, 1880. The inventory amounted to $1,018,669.70, and the increase was $352,373.81. He claims that he is entitled to commissions to the amount of $27,805.38, or, if not to so much, at least to the amount of $27,-180.50. The former sum is the amount to which he would be entitled at the rate which appears to have been allowed by this court to the administrator *pendente lite* of Henry Vanderveer, deceased. The latter sum is the amount to which he would be entitled if the allowance be made up to the limit fixed by the 110th section of the orphans court act (*Rev. 776*). He claims, also, $2,500 counsel fees for one of his counsel, and $5,000 for the other, for services and advice rendered and given to him in his administration. He also asks allowance for an accountant's bill of from $500 to $800, for services rendered in making up his account.

First, as to the amount of allowance to be made for commissions. The orphans court act (§ 110) provides that on the settlement of the accounts of executors, administrators, guardians or trustees, under a will, their commissions over and above their actual expenses, shall not exceed the following rates : On all sums not exceeding $1,000, seven per centum ; if over $1,000, and not exceeding $5,000, four per centum on such excess ; if over $5,000, and not exceeding $10,000, three per centum on such excess ; and if over $10,000, two per centum on such excess ; provided that the commissions of executors and administrators, in any estate where the receipts exceed the sum of $50,000, shall be determined by the orphans court on the final settlement of their accounts, *according to the actual services rendered*, not exceeding five per centum on all sums which come into their hands. By the next preceding section it is provided that the allowance of commissions to executors, administrators, guardians or trustees shall be made with reference to their *actual pains, trouble and risk* in settling such estate, rather than in respect to the *quantum* of estate. The allowance of commissions, it will be seen, while it is in the discretion of the court, is subject to certain positive

limitations, which cannot be exceeded, and also to certain admonitory provisions, by which the legislature intended still further to circumscribe the exercise of the discretion. It is provided that the amount to be allowed shall not exceed certain rates, and also that, in the exercise of the discretion, regard is to be had to what are the true grounds of compensation, trouble, risk and actual pains, rather than to the size of the estate. Courts are thus, as well as by the requirements of the due administration of justice, admonished that the mere fact that an estate is large, is not of itself a sufficient warrant for a large allowance to those to whom the law may have committed it for protection and management ; but they are to have regard rather to the other more appropriate considerations—actual pains, trouble and risk. At the same time, it is equally due to the proper administration of justice, and therefore to the interests of society, that the remuneration should not be so meagre and unsatisfactory as to induce such as can render valuable services in the management of such trusts, and whose acceptance thereof is to be desired, to refuse to assume the care and responsibility. All such, however, should be satisfied with reasonable compensation. In fixing such compensation, the size of the estate, where there is responsibility for its protection, will, of course, not be left out of the account. So, too, where an administrator is required to give bond in a large sum, that fact should enter into consideration. In the case in hand, however, it was deemed to be impracticable to obtain a proper person to administer who would give a bond with the security required by law, in an adequate penalty. The applicant for letters was, as before stated, one of the executors named in the will. On the probate of the will, he, with his coexecutor, would be entitled to the possession of the entire estate, without security. The ordinary deemed him, in all respects, a proper person to be appointed, but he was unable to give bond in conformity with the statutory requirement. The ordinary, therefore, in order to secure the estate and to justify the acceptance of such a bond as he could give, directed that the personal estate, which consisted of securities, all of which, with perhaps a comparatively insignificant exception, were government bonds

15

and stocks, be placed on special deposit in the safe deposit of the Newark Savings Institution, under the control of the ordinary, and permitted the administrator to enter on the duties of his office on giving a bond in the sum of $100,000 only.

The amount of compensation to be allowed will therefore not be materially affected by considerations flowing from the necessity of finding security to a large amount. By the means adopted as before mentioned, to obviate the difficulty created by the inability to obtain a proper person to administer who could give an adequate bond, the administrator was, to a very great extent relieved from risk in the keeping of the estate. And for so large an estate the actual trouble and pains required in managing it were comparatively small. Of the government securities, over $38,000 were redeemed by the United States in June, 1877, over $14,000 in October, 1878, and $95,000 in March, 1879. Of the stocks, there were three thousand six hundred shares of the New York Central and Hudson River Railroad Company; four thousand and fourteen of the Delaware and Hudson Canal Company, and seven hundred and ninety-six of the New York Gas Light Company. Of these stocks, the whole of the New York Central and Hudson River Railroad Company stock was sold February 21st, 1879; the whole of the Delaware and Hudson Canal Company stock and the shares of the New York Gas Light Company were sold March 18th, 1879. There were also certificates of deposit of the United States Trust Company to the amount of about $86,000. All those stocks were sold under the order of the court, and all the investments of the estate were made by like order, in government securities The administrator collected about $28,000 of interest on the coupons of the government bonds, and he received a large sum for dividends &c. It will be seen that he had none of the risk of investment and but little risk of safe keeping. In fixing the compensation, not much aid is to be derived from precedent. The allowance in each case must depend on the circumstances. The rate which appears to have been adopted in the Vanderveer case will furnish but little guide to what should be granted in this. In that case, the rate was, as before stated, one per cent. on the

amount of the inventory, and five per cent. on the increase. I see no reason for making any such distinction in this case. Moreover, the great difference between the amount of the Vanderveer estate (about $300,000) and the amount of this (over $1,300,000) is to be taken into account. I am of opinion that one per cent. on the whole amount of the estate will be ample remuneration to the administrator for all his trouble, pains and risk in the entire matter. No allowance will be made for the compensation of the accountant. The administrator's fees must be presumed to cover his trouble and expenditure in making up his account. Nor is there anything in the case to justify the allowance. One of his counsel, Mr. Parker, will be allowed for all of his services to the administrator, including those rendered in the Benson suit, $1,000; and the other, Mr. Gilchrist, will be allowed $2,500, in full for all services and advice properly chargeable against the estate. He appears to have rendered some services to the administrator which are not chargeable against the estate, but which should be paid for by the administrator out of his own funds, they being such as the latter was bound to render for the compensation which his commissions afforded. The register of this court has no claim to commissions, except on the money paid into court and deposited by the administrator in the bank of the Trenton Banking Company, by order and in the name of the ordinary. He is obviously entitled to no commissions on the securities or the proceeds of the sale or redemption thereof. But he should be compensated for his services in attending upon the placing the securities &c. in the safe deposit, and the delivery and return thereof from time to time out of and to it. For all his services in connection with the property of the estate, he will be allowed $250 in addition to his commissions on the money paid into court.