OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1920.

JOSEPH G. SHANNON, executor,

*v.*

JOHN RYAN et al.

[Decided June 14th, 1920.]

1. The rule of construction of wills that if legacies are given generally, and the residue of the real and personal estate is afterward blended and given in one mass, the legacies are a charge on the residuary real as well as personal estate only prevails where the inference arising from the words used in the residuary clause, taken in their natural and reasonable sense, is not restrained or avoided by other words or provisions in the will, to which due effect must be given in collecting the intent from the instrument as a whole.

2. *Corwine* v. *Corwine, 24 N. J. Eq. 579,* and *Johnson* v. *Poulson, 32 N. J. Eq. 390,* explained.

491

3. Neither the relationship of the legatees to the testatrix, nor the depth of her affection for them, are elements to be considered in ascertaining whether or not she intended to charge pecuniary legacies upon her real estate.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, reported in *91 N. J. Eq. 46.*

Mr. *Edwin F. Smith* and Mr. *Raymond Dawson,* for the appellant.

Mr. *John Milton,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by the executor of Ellen J. B. Shea, late of the city of Jersey City, to obtain a construction of her last will and testament. By that will Mrs. Shea, after providing for the payment of her debts, and making specific bequests to parties named, gave pecuniary legacies to certain relatives and to specified religious and charitable societies amounting altogether to $48,000. She then, by the thirteenth item of her will, provided that

"should my personal estate be insufficient to enable the foregoing pecuniary legacies to be paid, then I direct my executor to sell either all or so much of my land at Spuyten Deyvil, in the state of New York, as may be necessary, in such manner as in his judgment is deemed best to produce funds to supply the deficiency."

Having made this provision she then disposed of her residuary estate in the following language:

"All the rest, residue and remainder of my estate, wheresoever situate, and of whatsoever character, I give, devise and bequeath unto my three nephews, J. G. S., J. H. S. and R. S., in equal shares to them, their heirs and assigns, absolutely and forever."

The value of her personal estate available for the payment of the pecuniary legacies is $23,984. The Spuyten Duyvil prop-

erty has been sold by the executor and produced $3,500. The question submitted for decision is whether, in this situation of the testatrix's estate, the pecuniary legatees are entitled to call upon the executor to sell what remains of her real estate for the purpose of paying the pecuniary legacies in full. The learned vice-chancellor before whom the cause was heard reached the conclusion that the legacies were chargeable upon the whole residuary estate, real as well as personal, and a decree was entered in accordance with this view. The executor appeals.

In the case of *Corwine* v. *Corwine, 24 N. J. Eq. 579,* it was declared by this court to be a general rule of construction that if the legacies are given generally, and the residue of the real and personal estate is afterward blended and given in one mass, the legacies are a charge on the residuary real as well as personal estate. In the later case of *Johnson* v. *Poulson, 32 N. J. Eq. 390,* in commenting on the rule of construction adopted by us in the *Corwine Case,* we referred to the fundamental principle universally recognized that the real estate is not charged with the payment of legacies, unless the testator intended it should be, and that this intention must be either expressly declared or fairly and satisfactorily inferred from the language and dispositions of the will, and pointed out that these requirements were complied with in the cited case by giving the words "residue of real and personal estate" their natural and proper force and effect. In the earlier case the testator gave a pecuniary legacy to each of his three daughters, and then gave the entire residue of the estate, both real and personal, to his son. There was nothing in the will, therefore, except the residuary clause from which the intention of the testator with regard to making the legacies chargeable on the real estate could be ascertained; and we stated in *Johnson* v. *Poulson* that it was the absence of any inconsistent words or provisions in the will in the *Corwine Case* which justified the conclusion reached by us and expressed therein, and we then went on to say that "from the nature and grounds of this rule of construction it cannot prevail except where the inference arising from the words used in the residuary clause, taken in their natural and .reasonable sense, is not restrained or avoided by other words or provisions in the will,

to which due effect must be given in collecting the intent from the instrument as a whole."

Bearing in mind the limitations of the rule declared in the *Corwine Case*, and that it is subservient to the cardinal and predominant principle which seeks the purpose of the testator from all parts and provisions of the instrument considered together, we turn to the will now before us to ascertain from an examination of such of its provisions as throw light upon the matter whether or not the testatrix, by blending her real and personal estate in the residuary clause, intended to make the pecuniary legacies a charge upon all the lands of which she died seized. It may be assumed that at the time she made her will she had some doubt whether her personal estate would be sufficient to satisfy all of the pecuniary legacies. That is apparent from the provision of the thirteenth item of the will. It may be conceded also that, except for the presence of this thirteenth item, the pecuniary legacies would be chargeable upon the whole of the real estate of the testatrix under the rule of the *Corwine Case*. The question remains, What was her purpose in having that item written in the will? That she had some purpose cannot be doubted. That this court must give effect to that purpose if it can be ascertained from the language of the provision, and from the other parts of the instrument, cannot be denied; for it is a fundamental rule in the construction of wills that due effect must be given to every provision contained therein. To give to the residuary clause the force attributed to it by the court below results in the complete excision of this item of the will, for the Spuyten Duyvil property is a part of the residuary estate, and if it is subjected by the residuary clause to a charge for the payment of legacies, the item is mere surplusage.

It is suggested by counsel that, as this property is located in the State of New York, and as the New York courts have repudiated the rule of construction adopted by us in the *Corwine Case*, it is to be presumed, in ascertaining the intent of the testatrix, that she was familiar with the doctrine of the courts of our sister state, and that her purpose in inserting this provision in her will was to subject that portion of her real estate to the same charge in favor of legacies that her New Jersey land would

be subjected to by the general residuary clause by force of the doctrine of the *Corwine Case*. We cannot yield to this suggestion. To attribute to an elderly widow residing in New Jersey knowledge of the decisions of the courts of a sister state upon an abstruse doctrine relating to the construction of wills, would be to assume a greater acquaintance with the subject upon her part than is probably possessed by a majority of the members of our own bar, to say nothing of the members of this court before the argument of this cause. Such a presumption is against common experience and cannot be indulged in.

What, then, was the purpose intended to be accomplished by the testatrix? The language used by her, as it seems to us, decisively answers that question. Having bestowed pecuniary gifts amounting to $48,000 she says:

"Should my personal estate be insufficient to enable the foregoing pecuniary legacies to be paid, then I direct my executor to sell either all or *so much of* my land at Spuyten Duyvil in the state of New York as may be necessary to produce funds to supply the deficiency."

She had in mind the possible insufficiency of her personal estate to satisfy legacies. She intended that they should be paid even if it was necessary to appropriate some part of her real estate for the purpose; and, with this intention present in her mind, she expressly declared to what extent her real estate should be chargeable—that is, by the appropriation of the Spuyten Duyvil property, or so much of it as may be necessary to satisfy the deficiency; evidently, considering that this piece of land was of sufficient value to provide for any deficiency that might be found to exist; and she then provides in the following clause that what is left of her personal estate, if anything (after the payment of legacies), and what is left of her real estate after appropriating the Spuyten Duyvil property in the manner already directed by her, shall go to her residuary legatees and devisees. A contrary intention cannot be read in this will except by entirely disregarding the instruction contained in item 13, in face of the cardinal rule of construction already referred to which requires courts to give due effect to *every provision* contained in a will.

Counsel for the respondents has argued that the relationship of the legatees to the testatrix should be taken into account in ascertaining her intent; that it is shown that the religious and charitable societies which were the objects of her bounty were very close to her heart, and that this fact indicates an intent to make the legacies chargeable on the land. This argument does not appeal to us. As a general proposition all the beneficiaries in the will of a testatrix are "close to her heart;" some closer than others, it is true, but none of them strangers in whom she has no interest by reason of blood ties, or otherwise. To undertake to determine whether or not a testatrix intended to make legacies chargeable upon her residuary real estate by measuring the depth of the affection which she had for certain of her legatees would be like attempting to sail a ship without compass or rudder. How great must the affection be, and upon what percentage of the legatees is it to be bestowed, in order to create the charge? . How slight must it be in order to exonerate the land? How can courts measure degrees of affection, or determine the percentage of the legatees upon whom it has been bestowed in full measure? The impossibility of creating a standard by which this can be done is, as it seems to us, a complete refutation of the argument.

For the reasons above set forth we reach the conclusion that the decree under review must be reversed.

*For affirmance*—TRENCHARD, MINTURN, BLACK, HEPPEN-HEIMER, WILLIAMS, ACKERSON—6.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, PARKER, BERGEN, KALISCH, WHITE, TAYLOR, GARDNER—8.