SALENA A. McCRACKEN et al., appellants,

*v.*

HENRIETTA D. GULICK et al., respondents.

[Submitted June term, 1920.    Decided November 15th, 1920.]

1. An extraordinary dividend on stock in the hands of a trustee should be apportioned between the income and capital of the trust.

2. *Day* v. *Faulks, 79 N. J. Eq. 66;* affirmed, *81 N. J. Eq. 173,* approved and followed.

---

On appeal from a decree of the prerogative court.

This is an appeal from a decree of the prerogative court affirming a decree of the Essex orphans court on exceptions to an account of the trustee under the will of Charles Dowden, who died in 1880. Among the assets of the estate were two hundred and

thirty-one shares of the stock of the American Insurance Company of Newark. The will directed the executors to divide the residue of the income (which included the income on this stock) into three equal parts and pay the same to the testator's widow and his two daughters. After providing for distribution of income after the death of his widow, he directed that one-half of the principal on the death of each daughter be paid to her children. At his death the capital stock of the insurance company was $600,000, divided into one hundred and twenty thousand shares. There was a surplus of $748,967. In 1895 the surplus had increased to $1,301,071. In 1907 it was $1,463,510. The capital was then increased to $750,000. The surplus, in 1909, was $1,954,999. In 1910 the capital stock was increased to $1,-000,000, and in 1917 to $2,000,000. The last resolution of the directors increasing the capital stock recited that the company had prior to 1895 accumulated from previous earnings a surplus exceeding $1,000,000, and had ever since maintained a surplus in excess of that sum; and then provided that $1,000,000 be transferred to capital account out of surplus earned previous to January 1st, 1895, and that the surplus so transferred and the investments representing the same be considered full payment of the increase of capital stock. Meantime there had been purchased with the assets of the estate fifty-eight shares in 1907, and ninety-six shares in 1909. These purchases made the total holding three hundred and eighty-five shares. The new stock was issued; three hundred and eighty-five shares to the trustee, who has been substituted for the executors. He filed an account in which he charged himself with the whole three hundred and eighty-five shares as income; he treated the stock as worth $18 per share and charged himself with $6,930 as if it were cash. This value exceeded the book value and must have reflected the elements which made the stock worth more than par. On appeal the orphans court held that sixty-one shares were *corpus,* and the account was accordingly amended, but the charge was carried out as cash both to *corpus* and income at $18 per share. On appeal the decree of the orphans court was affirmed by the prerogative court.

*Mr. John H. McCracken,* for the appellants.

*Mr. Jehiel G. Shipman,* for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

The question presented is answered by our decision in *Day* v. *Faulks, 81 N. J. Eq. 173.* In that case Vice-Chancellor Stevens had stated (*79 N. J. Eq. 66*) the difficulties with his usual clearness and precision and we affirmed for his reasons. It is unnecessary, therefore, to go to other jurisdictions for a rule, as far as any question presented by this case is concerned. It may be well to restate the reasons.

The fundamental principle is to carry out the intent of the testator. Clearly, when he has created a trust fund and directed that the income be paid a beneficiary for life, he intends to secure that income to the life tenant; that is the very object of the fund. Where specific stocks may, pursuant to the will or the statute regulating investments for a trust fund, be retained by the trustee, it is a fair inference that the testator meant the life tenant to have the ordinary annual income of those stocks within the limits of variation permitted to the judgment of the directors. The difficulty arises when the income is extraordinary, due to an unusual accumulation of earnings by reason of extraordinary prosperity, or when the accumulated savings of years are to be distributed. Where the dividend is extraordinary we long ago adopted the rule of apportionment between the tenant for life and the remainderman. *Van Doren* v. *Olden, 19 N. J. Eq. 176; Ashurst* v. *Potter, 29 N. J. Eq. 625; Lang* v. *Lang, 57 N. J. Eq. 325.* Whatever may be said in favor of giving extraordinary dividends to the *corpus* of the estate by way of more ample security for the maintenance of the trust fund, it is equally consonant with the presumed intent of the testator that the life tenant, for whose welfare he has shown himself solicitous by the creation of the trust, should receive at least some of the extraordinary dividend. It may often be made up of earnings with-

*92 N. J. Eq.*                    McCracken *v.* Gulick.

held by the good judgment of the directors from distribution at the expense of the life tenant, and it is but fair that he who has suffered by the enforced abstinence should profit by the action of the directors in distributing during the continuance of the life estate the accumulations resulting from that abstinence. But for the necessity of the directors of the corporation guarding against business risks and possible future misfortunes, all earnings of the corporation made after the testator's death might be distributed to the life tenants, since all such earnings are income on the investment as it stood at that time. As long as proper management required that these earnings be not distributed, they may be retained, but when the time comes for a distribution it is equitable that the portion of earnings after testator's death to be distributed should go to the life tenant. A difficulty, however, arises when the distribution takes the form of a stock dividend. As the vice-chancellor pointed out in *Day* v. *Faulks,* a stock dividend if transferred to the life tenant gives him not only earnings during his life tenancy but an interest in the original capital and earnings prior to testator's death. A stock dividend may well be large enough to reduce the book value as well as the market value of the stock held for the *corpus* of the estate, because it amounts to giving each share a smaller proportionate interest in the assets of the corporation. It will certainly lessen the proportionate interest of the estate in the corporation, a result that cannot have been contemplated by the testator. His desire for the welfare of the life tenant would necessarily lead him to preserve intact the principal of the trust fund; that has been the guiding principle of our decisions. To withhold all dividends would strengthen the *corpus* of the estate, but the testator can hardly mean to starve the life tenant for the benefit of remaindermen, whom he often has never seen. What is necessary is an equitable rule for the ascertainment of the respective interest of life tenant and remainderman in surplus which has been converted into capital stock. To use the language of the vice-chancellor, in *Day* v. *Faulks,* the company "has made a disposition" of the earnings to that extent. We still think the rule in *Day* v. *Faulks* is equitable. It gives the new capital stock

to the estate, but subject to a charge in favor of the life tenant of the amount of his money used to pay for the stock, usually the par value. This gives protection to the estate against the possibility of a reduction in the value of the shares, and it gives the life tenant the cash out of earnings accrued during his life estate which the directors have applied irrevocably to the capital of the corporation so that not even the courts can hereafter force the distribution of that cash in the form of a dividend. The practical working is shown by the decree of this court in *Day* v. *Faulks*. It adjudges "that the life tenants under said will are entitled to an interest in said stock so received by said trustee equivalent to their share of the said earnings which it was intended to capitalize, and which were capitalized as aforesaid, and that the complainant, as such trustee, is entitled to all residuum of interest in said stock, such residuum representing capital of the company, *in esse* as such, when such dividend was declared and therefore belonging to the principal of the trust fund; and that the life tenants are entitled to have their share of said earnings charged on said stock and so much of said stock sold as may be necessary to satisfy the charge and so enable them to realize their interest therein." This rule has the merit of simplicity; it protects the *corpus* against wasting by stock dividends, and gives the life tenant that portion of the earnings irrevocably taken from the life tenant to pay for the new stock; he loses the advantage of securing market value for the stock when it is at a premium. That market value goes to the *corpus* if the trustee chooses to sell to satisfy the charge. This is in harmony with the rule in *Ballantine* v. *Young, 79 N. J. Eq. 70*, which gave the value of an option to take new stock to the *corpus* of the trust fund.

The application of this rule to the present case results in a modification of the figures. The new shares (three hundred and eighty-five) had a total par value of $1,925. This amount only is the amount of earnings taken irrevocably from the life tenant and invested in the new stock and chargeable to the trustee as income. The record is remitted for the necessary corrections.

*For affirmance*—None.

*For reversal*—WILLIAMS—1.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TREN-CHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, TAYLOR, ACKERSON—12.