The pleadings in this case require the determination of two questions as to the proper administration of the trust created under the will of George M. Bowlby, deceased.
The trust fund, as created, consisted of one thousand shares of the preferred stock of Westinghouse Electric, c., Company. The will directs the trustee to pay "the income from the said shares" in equal shares to the widow and three children. On the death of a child without issue, or of the widow, that share of income thereafter is to be divided among the survivors; on the death of a child leaving issue, such issue is to receive that share of income. On the death of the last survivor of the four "the said shares are to be divided" among *Page 69 
testator's grandchildren then living and the issue, perstirpes, of such grandchildren, if any, as have died leaving issue.
The widow and three children survived the testator and are still living. There were four grandchildren living at testator's death; they are still living — all infants, and parties defendant.
Subsequent to the testator's death, the Westinghouse Electric,c., Company has issued additional stock — the existing stockholders of course having prior rights to subscribe thereforpro rata, according to the number of shares already held. The trustee being a holder of one thousand shares had the right to subscribe for its proportion of the new stock, but having neither funds, nor authority under the will, to purchase such stock, sold the rights for $5,000. The first question is as to whether this $5,000 belongs to the corpus of the trust or should be distributed to the life tenants as income.
It seems clear that these moneys belong to corpus and not to income. The right to subscribe to the new stock is inherent in and appurtenant to the ownership of the old stock; it has nothing to do with the right to receive the income from the old stock.
Moreover, the fact that the rights to subscribe could be sold for this sum indicates that the subscription price was below the actual value of the stock. That being so, the total value of the stock holdings of a stockholder who did not subscribe would be decreased on the issuance of the new stock.
To illustrate: Suppose the company had ten thousand shares of stock outstanding, and assets of $1,100,000. Each share would then be worth $110 and the trust fund held by the trustee would be worth $110,000. The company then issues ten thousand additional shares, at par, and receives of course $1,000,000, making its total assets $2,100,000, and making the value of each of the twenty thousand shares now outstanding $105. A man who, before the new issue, had one share (then worth $110) and $100 in cash, or total assets of $210, and who had bought an additional share with his $100 cash, would still have total assets of $210,i.e., two shares each worth $105. But a man who before the new issue had had *Page 70 
two shares (then worth $220) and no cash, and so had not bought any additional shares, would, after the new issue, have the same two shares but now worth only $210. His total assets would have been reduced.
So in the instant case, the value of the stock in the hands of the trustee was reduced, and the value of the corpus of the trust fund would be reduced unless the trustee is entitled to, and does, add to the stock, the moneys received from the sale of the rights.
The rule is settled in this state, that in the ordinary case, premiums received for the sale of rights to subscribe, belong tocorpus. Ballantine v. Young, 79 N.J. Eq. 70; McCracken v.Gulick, 92 N.J. Eq. 214 (at p. 218).
It is argued by the life tenants that in this particular case the language of the will refers only to the stock as the trust fund, and contains no provision giving the trustee the right to sell anything, or to invest anything — that hence the trust fund must be deemed to be composed of the stock alone. It is sufficient to refute this argument, to consider what would happen if the Westinghouse Electric, c., Company should become insolvent or dissolve, and wind up its affairs, distributing to the stockholders their pro rata shares of the proceeds of the corporate assets. This would leave the trustee with no stock, but with a cash fund in place thereof. It will not seriously be argued either that the life tenants would be entitled to this cash, or that the trustee would not have both the power and the duty to invest the cash fund in proper securities, and proceed with the administration of the testamentary trust.
Since the testator has not, either expressly or by necessary implication, directed that the premiums from the sale of rights should go to the life tenants, they belong to corpus.
The second question is as to the ownership or distribution of a stock dividend declared and issued by the Westinghouse company in 1924.
It is obvious that a stock dividend is actually two things — first a dividend, and second the enforced use of the dividend moneys to purchase additional stock at par. So much, therefore, *Page 71 
of the par value of the new stock so distributed as would have gone to the life tenants if the dividend had been in cash, should go to the life tenants, the balance to corpus.
Where corporate stock is held in trust for a life tenant and a remainderman, and a stock dividend is thereafter declared representing more than the corporate earnings subsequent to the creation of the trust, such stock dividend is partly income and partly corpus, and is to be apportioned accordingly between life tenant and remainderman. Day v. Faulks, 79 N.J. Eq. 66;affirmed, 81 N.J. Eq. 173; McCracken v. Gulick, supra;Hagedorn v. Arens, 106 N.J. Eq. 377.
In the instant case, the evidence shows that the stock dividend was not declared solely out of earnings since testator's death. The corporate surplus on March 31st, 1923, was $48,554,142.37; on March 31st, 1924, before deducting the stock dividend of $10,773,000, it was $56,359,718.43, or an increase of $7,805,576.06, which increase was earnings since March 31st, 1923, and the balance of the $10,773,000 was taken from what was principal on that date. Therefore if March 31st, 1923, had been the date of the creation of the trust, and March 31st, 1924, the date of the declaration of the stock dividend, the stock dividend would be apportionable between life tenant and remainderman in the ratio of $7,805,576.06 to $2,967,423.94.
The actual date of the creation of the trust was the date of testator's death — March 2d 1923; and the dividend was declared March 5th, 1924. The correct figures for those dates must therefore be obtained, or worked out from the figures now in evidence — in order to find the proper ratio of apportionment.
The stock (of the stock dividend) goes to corpus, subject to a charge in favor of the life tenants for the amount due them, which can be raised and paid by a sale of so much of the stock as is necessary for that purpose. Hagedorn v. Arens, supra (atp. 382). *Page 72