16 N.J. Super. 199 (1951)
84 A.2d 475
CENTRAL HANOVER BANK AND TRUST COMPANY, AS SURVIVING TRUSTEE UNDER THE WILL OF EDWIN G. BRUNS, JR., AND MARTHA C. BRUNS, AS EXECUTRIX OF THE WILL OF EDWIN G. BRUNS, DECEASED TRUSTEE, PLAINTIFFS,
v.
MARGARET O. BRUNS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 9, 1951.
*201 Mr. Sydney G. Soons, attorney for plaintiffs (Mr. Harrison F. Durand, on the brief).
Mr. Alfred C. Clapp, attorney for defendant Margaret O. Bruns.
*202 Mr. Thomas F. Daly, attorney for defendant, New York Times Co.
Messrs. Toner, Speakman and Crowley (Mr. Marshall Crowley appearing), attorney for defendant Emilie B. Clifford.
Messrs. Otis and Kilkenny (Mr. Kilkenny appearing), attorney for defendant Actors' Fund of America.
Mr. Herbert W. Backes, guardian ad litem, pro se.
LEONARD, J.C.C.
The complaint herein was filed by Central Hanover Bank and Trust Company, surviving trustee under the will of Edwin G. Bruns, Jr., and by Martha C. Bruns, as executrix of the will of Edwin G. Bruns, deceased trustee.
The testator, Edwin G. Bruns, Jr., died on January 13, 1941, leaving his last will, which was duly admitted to probate by the Surrogate's Court of Monmouth County on January 24, 1941, and letters testamentary and letters of trusteeship were duly issued by said court to Edwin G. Bruns on that date. On July 8, 1943, Central Hanover Bank and Trust Company duly qualified as co-trustees of the trust created by said will. Said Edwin G. Bruns, the co-trustee, died on July 8, 1950, and Martha C. Bruns was appointed as executrix. This is the first intermediate accounting by the trustees covering their administration of the trust, for the period beginning September 15, 1943, and ending July 8, 1950.
The complaint prays for the allowance and approval of the said account, and the surviving trustee therein also seeks the instructions of the court in respect to various questions arising under said will.
By his will the testator, after bequeathing to his wife, Margaret O. Bruns, his household furnishings and automobile and real property, provided in Articles Fifth, Sixth and *203 Seventh, for three trust funds. These Articles of his will read as follows:
"FIFTH: I direct my Executor hereinafter named to set apart a sum equal to forty-five percent of my net estate, in cash or from investments held by me at the time of my death, and deliver the same to the Trustees hereinafter named, to be held by the Trustees in Trust for the following uses and purposes:
(a) I direct said Trustees to receive the income arising from any investments held or made by them and to pay over the net income to my wife, MARGARET BRUNS, if she then be living, during the term of her life, in quarterly installments.
(b) Upon the death of my wife, or if my wife shall predecease me, I direct my Trustees hereinafter named to pay over the net income of the aforesaid trust fund to my father, EDWIN G. BRUNS.
(c) Upon the death of my father, EDWIN G. BRUNS, or in the event that my father shall predecease me or my wife, I give, devise and bequeath the corpus of said trust fund as follows:
One-half of the corpus of said trust fund to my niece, Emilie G. Terry, to be hers absolutely and forever.
One-half of the corpus of said trust fund to be divided equally between The Actors Fund of America; The Saranac Lake Sanitarium for Prevention of Tuberculosis, Saranac Lake, New York and Hundred Neediest Cases Fund, sponsored by the New York Times, New York City, New York, share and share alike.
SIXTH: I direct my Executor hereinafter named to set apart a sum equal to forty-five percent of my net estate, in cash or from investments held by me at the time of my death, and deliver the same to the Trustees hereinafter named, to be held by the Trustees in Trust for the following uses and purposes:
(a) I direct said Trustees to receive the income arising from any investments held or made by them and to pay over the net income to my father, Edwin G. Bruns, if he then be living, during the term of his life, in quarterly installments.
(b) Upon the death of my wife, or if my father shall predecease me, I direct my Trustees hereinafter named to pay over the net income of the aforesaid trust fund to my wife, Margaret Bruns.
(c) Upon the death of my wife, Margaret Bruns, or in the event that my wife shall predecease me or my father, I give, devise and bequeath the corpus of said trust fund as follows:
One-half of the corpus of said trust fund to my niece Emilie G. Terry, to be hers absolutely and forever.
One-half of the corpus of said trust fund to be divided equally between The Actors Fund of America; The Saranac Lake Sanitarium for Prevention of Tuberculosis, Saranac Lake, New York, and Hundred Neediest Cases Fund, sponsored by the New York Times, New York City, New York.
*204 SEVENTH: All the rest, residue and remainder of my estate, amounting to ten percent of my net estate, in cash or from investments held by me at the time of my death, I direct my Executor hereinafter named to set apart and deliver the same to the Trustees hereinafter named, to be held by the Trustees in Trust for the following uses and purposes:
(a) I direct said Trustees to receive the income arising from any investments held or made by them and to pay over the net income to my niece Emilie G. Terry, if she then be living, during the term of her life, in quarterly installments.
(b) Upon the death of my said niece, Emilie G. Terry, I give and bequeath the principal of the trust fund created for her benefit, to her child or children her surviving, share and share alike."
By Article Eighth he appointed his father, Edwin G. Bruns, as executor of his will, and by Article Tenth he appointed his father and Central Hanover Bank and Trust Company as trustees thereunder. Article Tenth also contains numerous other provisions conferring powers and discretion upon his trustees, and reference will be made thereto in more detail in the portions of this opinion directed to said Article.
Testator left no issue surviving him and was survived by his widow, Margaret O. Bruns. He was also survived by his father, who subsequently died on July 8, 1950. In addition, he left his niece, Emilie G. Terry, who remarried subsequent to the date of his will and is now known as Emilie B. Clifford. Mrs. Clifford has three children, Frederick G. Terry, Jr., Edwin G.B. Terry and Michael B. Terry, who are aged 13, 11 and 8 years respectively.
By stipulation and by the terms of the pretrial order all of the questions originally presented in the complaint have been agreed upon or determined, with the exception of two. Those two remaining questions are as follows:
First: Is amortization of premiums paid on the purchase of securities mandatory or in the discretion of the surviving trustee?
Second: Should three certain stock dividends received on the Eastman Kodak Company stock be allocated to principal or income?
I shall deal with each of these questions separately.

*205 FIRST: AMORTIZATION OF PREMIUMS.
The pertinent portions of Article Tenth of said will are as follows:
(The initials preceding each separate paragraph hereinafter set forth were not contained in the original will. I have so designated each of said paragraphs merely for the purpose of convenience by way of reference herein.)
A. "My Trustees shall not be restricted in their choice of investment or reinvestments in such stocks and securities as are permissible investments or reinvestments for Trustees by the laws of the State of New Jersey.
B. My Trustees shall not be required to set up a sinking fund or other fund to amortize or absorb the premium at which any property may have been purchased or may be held by my Trustees.
C. In the event that the personal trustee die before the completion of the trusts herein, the corporate trustee shall be confined in its handling of the property of the trusts to those actions permitted and prescribed for trustees by the laws of the State of New Jersey, except that any property in the trusts at the death of the personal trustee may be retained."
The surviving trustee claims that Article Tenth, paragraph B, gives it discretion as to the amortization of premiums and that its determination in this respect should be controlling.
Defendant, Margaret O. Bruns, claims that said paragraph does not give the trustee discretion, but absolves the trustee of the requirement to amortize, and that it should pay the entire income from all securities to the beneficiaries of the income.
Defendant, Emilie B. Clifford, and defendant, The Actors' Fund of America, maintain that while the original paragraph may have given the co-trustee a discretion as to whether to amortize or not, that since the death of the individual trustee the surviving trustee must amortize the premiums. It relies upon paragraph C in Article Tenth for support of this latter proposition.
The primary question to be determined is the effect of paragraph B of Article Tenth. Before determining whether amortization shall be required or not, it might be well to *206 ascertain just what is meant by the term "amortization." In the case of Old Colony Trust Co. v. Comstock, 195 N.E. 389; 101 A.L.R. 1 (Sup. Jud. Ct. Mass. 1935), the court said:
"The trustees purchased at a premium bonds as an investment for part of the trust fund. They had thus paid for the investments a greater sum than would be repaid at the maturity of the bond. They then ascertained the actual net income from the bonds, based upon the premium, the rate of interest and the date of maturity, and paid the net income thus ascertained to the life tenant and retained the difference between the net income thus ascertained and interest in fact received as an accumulating fund which at the maturity of the bond would leave the original capital of the trust unimpaired or intact. Stated in another form of words, they deducted from each interest or coupon payment on the bonds equal instalments sufficient in amount in the aggregate to bring the purchase price of the bonds to par at maturity, paying only the balance of each such payment to the life tenant. Thus the accounting value of the capital of the trust would be restored. This is termed amortization of the amount paid as premium on the bonds purchased."
The general rule in New Jersey as the amortization of premiums paid on securities is that amortization is required unless the will provides otherwise. In Ballantine v. Young, 74 N.J. Eq. 572 (Ch. 1908), affirmed on other grounds, 76 N.J. Eq. 613 (E. & A. 1910), the court said:
"We therefore adhere to the rule declared in the Baker Case * * * that in the absence of a clear direction in the will to the contrary, where investments are made by the trustees, the principal must be maintained intact from loss by payment of premiums on securities having only a definite term to run." (Italics mine.)
The court further stated:
"The justification for the rule is very apparent. The income on a bond having a term of years to run and purchased at a premium, is not the sum paid annually on its interest coupons. The interest on a $1,000 ten-year five per cent bond, bought at one hundred and twenty per cent, is not $50, but a part thereof, and the remainder is a return of the principal."
See also: 5 N.J. Practice, Wills & Administration, page 588, par. 253 (Clapp).
*207 Since the decision in Ballantine v. Young, decided in 1908, there have been no reported decisions in this State on that precise question, although the case itself has been referred to by later cases on one or more occasions.
As recognized by that case, it is the testator's intention as disclosed by his will that is to govern. That follows the settled canon of will construction. It must, therefore, be determined whether the testator by paragraph B of Article Tenth discloses an intention to depart from the rule of said case. A reading of said paragraph discloses that the testator said:
"Shall not be required to set up a sinking fund * * * to amortize premiums."
This will is symmetrical and complete. It has not been carelessly drawn, and it contains intrinsic evidence of careful design and comprehension. In seeking the intention of the testator it must be presumed that he framed his will in view of and in contemplation of the general rules of construction which have been established by the courts. Bonnell v. Bonnell, 47 N.J. Eq. 540 (Ch. 1890); Budd v. Wilson, 61 N.J. Eq. 246 (Ch. 1901). If the testator had made no provision in his will concerning amortization, under the rule of Ballantine v. Young, supra, the trustees would be required to amortize. So if the testator desired that it be mandatory that they amortize, he need not have made any mention of this provision. Its omission would have acquired that result. On the other hand, if he had intended that it be mandatory that they should not amortize, he could have used simple and apt words to express that intention. All he needed to do was to say so. I can come to no other conclusion but that the plain and unambiguous language of said paragraph B, Article Tenth, discloses an intention on the part of the testator that the trustees should have the discretion to amortize such premiums or not, as they see fit. The language used by him must be interpreted as meaning exactly what it says. White v. Willever, 112 N.J. Eq. 546 (Prerog. 1933), affirmed 118 *208 N.J. Eq. 70 (E. & A. 1935). The court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. Stryker v. Sands, 4 N.J. 182. It is obvious that the testator did not want to bind his trustees by a rigid rule. It is conceivable that in certain instances such a rule would operate to the detriment of the life tenants, and in other cases to the detriment of the remaindermen. The contention advocated by the other parties herein would require a strained construction of the plain language used.
Having construed the language of paragraph B, Article Tenth, it now becomes necessary to ascertain whether upon the death of Edwin G. Bruns, the co-trustee, on July 8, 1950, the powers of the surviving trustee are in anywise limited by virtue of the language of paragraph C, Article Tenth. As hereinbefore stated, it is advocated by defendant Emilie B. Clifford, and defendant The Actors' Fund of America, that said paragraph C makes it mandatory on the surviving trustee to amortize. It is fundamental that the purpose of a testator must be sought from all parts and provisions of the instrument considered together, and that the will must be read as a whole. Shannon v. Ryan, 91 N.J. Eq. 491, 494 (E. & A. 1920). Fink v. Harder, 111 N.J. Eq. 439, 441 (E. & A. 1932). A reading of paragraph C in the light of paragraph A leads me to a conclusion that said paragraph C does not in anywise take away the discretion to amortize from the surviving trustee. Paragraph A relieves the trustee from investing in "permissible investments or re-investments for trustees under and by virtue of the laws of New Jersey." In other words, this paragraph leaves it in the discretion of the trustees as to whether or not they should invest in "legals." It is this discretion that the testator intended to eliminate in paragraph C. That intention is disclosed by the last clause of said paragraph, where the testator states:
"Except that any property in the trusts at the death of the personal trustee may be retained."
*209 Any other construction would leave this last clause meaningless and ineffective. It is a cardinal rule of construction that all words contained in a will must be given effect so far as possible. Kutschinski v. Sheffer, 109 N.J. Eq. 659, 661 (E. & A. 1932). In the light of this clause it is clear that the testator intended by paragraph C to compel the surviving trustee to invest only in legals, but it might continue to the investment of non-legals heretofore made by the co-trustee.
Therefore, in conclusion, it is my determination that paragraph B, Article Tenth, gave to the co-trustees the discretion whether to amortize or not, and that this discretion is presently reposed in the surviving trustee, and that paragraph C, Article Tenth, does not in anywise limit this discretion.

SECOND: THE TWO FIVE PER CENT STOCK DIVIDENDS OF EASTMAN KODAK COMPANY.
The trustees received the following stock dividends on the common stock of Eastman Kodak Company, on the following dates: 20 shares as a five per cent stock dividend on January 24, 1949; 21 shares as a five per cent stock dividend on January 23, 1950. The trustees allocated these two dividends to principal, and the surviving trustee now maintains that under the will of the testator such allocation was proper.
The defendant, Margaret O. Bruns, alleges that both of said stock dividends were ordinary stock dividends and, therefore, allocable to income.
The defendant, The Actors' Fund of America, maintains that both of said stock dividends were properly allocated to principal.
The pertinent part of Article Tenth of the testator's will provides as follows:
"All extra stock dividends and all realized appreciation in the value of stocks, bonds, securities or other property, resulting from the sale or other disposition thereof, shall be considered principal *210 and not income, but ordinary stock dividends paid regularly by a corporation, in lieu of, or in addition to regular cash dividends, shall be considered income and not principal, provided, however, that my Trustees' determination as to whether any stock dividend is ordinary or extraordinary and their determination as to whether any stock dividend should be apportioned or set aside in whole or in part of principal or income, shall be conclusive and binding upon all persons now or hereafter interested in the trust estate."
Ordinarily where corporate stock is held in trust for a life tenant and a remainderman, and a stock dividend is thereafter declared representing more than the corporate earnings subsequent to the creation of the trust, such stock dividend is partly income and partly corpus, and has to be apportioned accordingly between the life tenant and the remaindermen. Day v. Faulks, 79 N.J. Eq. 66 (Ch. 1911), affirmed 81 N.J. Eq. 173 (E. & A. 1912); McCracken v. Gulick, 92 N.J. Eq. 214 (E. & A. 1920); Hagedorn v. Arens, 106 N.J. Eq. 377 (Ch. 1930).
But this rule does not apply where the testator provides otherwise in his will. In that event it is the plain intent of the testator that is to govern. In re Fisher, 115 N.J. Eq. 329 (E. & A. 1934); Hagedorn v. Arens, supra, at page 379.
The testator herein specifically relieved the trustees from following the ordinary rule above referred to. He provided that "all extra stock dividends shall be considered principal and not income." And further, that "The ordinary stock dividends * * * shall be considered income and not principal." Then, as to whether they were ordinary or extraordinary, he provided: "Ordinary stock dividends paid regularly by a corporation in lieu of or in addition to regular cash dividends."
Then, realizing that even with the guide set forth in said will that the determination by the trustees would be a most difficult one to make, he provided: "However that my trustees' determination as to whether any stock dividend is ordinary or extraordinary, and their determination as to whether any stock dividend should be apportioned or set aside in whole or in part or principal or income, shall be conclusive and binding *211 upon all persons now or hereafter interested in the trust estate."
The trustees herein, after due and proper consideration, made a determination and allocated these two stock dividends to principal. That determination I find to be conclusive and binding on all parties to this issue under the circumstances hereof.
Counsel for the defendant Margaret O. Bruns, argues that in this State where a trustee is constituted an umpire to determine what interpretation is to be put upon the testator's words, and what effect is to be given to them, this decision may not be contrary to the plain intention of the testator, or contrary to a clear provision of the will. For support of this proposition he relies upon the case of Taylor v. McClave, 128 N.J. Eq. 109 (Ch. 1940). A reading of that case discloses that it dealt with the construction of the wording of the will involved therein. The clause involved therein was entirely different in its effect than the clause involved herein. The court in that case held that where the construction of a will is left to the decision of the executors and trustees, such decision may not be contrary to the plain intention of the testator, or contrary to a clear provision of said will. In the case at bar it was not necessary for the trustees to make any construction of the provisions of the will. The wording of said will was clear and needed no construction, and the wording thereof clearly sets forth the testator's intention. He desired to leave to the trustees the factual determination of whether said stock dividends were ordinary or extraordinary. In the absence of any abuse of power the determination of said trustees must be binding.
Scott on Trusts, sec. 233.5, provides as follows:
"By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling *212 unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules. Thus in Chase National Bank v. Chicago Title & Trust Co., 246 App. Div. 201, 284 N.Y. Supp. 472 (1935, affirmed 271 N.Y. 602, 659, 3 N.E. (2d) 205 (1936)), the trust instrument provided that the trustee with the consent of a committee named by the settlor in the instrument should have power to determine whether stock dividends, rights or other things were to be treated as capital or income and power to determine the mode in which expenses should be apportioned. The court held that under this provision stock dividends could properly be allocated to principal, although at that time in the absence of such a provision they were held to be apportionable between principal and income." (Italics mine.)
There has been absolutely no proof of any abuse of discretion on the part of the trustees. To the contrary, the only evidence adduced at the trial demonstrated that they acted prudently and carefully in making their determination.
Therefore, insofar as the two five per cent stock dividends of Eastman Kodak Company received January 24, 1949, and January 23, 1950, respectively, I conclude that the trustees properly allocated both of the same to principal.

THIRD: THE TEN PER CENT STOCK DIVIDENDS OF EASTMAN KODAK COMPANY.
Since the date of the account herein, the surviving trustee has received on January 2, 1951, a ten per cent stock dividend amounting to 44.1 shares. It prays instructions as to whether this stock dividend should be allocated to principal or income.
Defendant Margaret O. Bruns contends said dividend should be allocated to income and defendant The Actors' Fund of America contends it should be allocated to principal.
It will be noted that while this is the third stock dividend declared by said company it is in the amount of ten per cent, the first two being in the amount of five per cent each.
*213 The Restatement of the Law of Trusts, chapter 7, section 236, as amended in 1949 provides:
"Whether a dividend is an ordinary or extraordinary dividend depends upon all the circumstances of the case. Among the circumstances which may be of importance in determining whether a dividend is an ordinary dividend are the following: (1) Whether similar dividends have been declared with regularity in the past; (2) whether such dividends are regularly paid out of current earnings; (3) the frequency with which such dividends are declared; (4) the size of the dividend in relation to the market value of the shares at the time of the creation of the trust; (5) the designation, if any, placed upon it by the directors of the corporation; (6) the source of the earnings from which the distribution is made." (Italics mine.)
It cannot be seriously argued that a similar dividend, to wit, ten per cent, has been declared with regularity in the past. As a matter of fact, it has not.
The testator in the specific portion of Article Tenth hereinbefore referred to, in discussing the two five per cent stock dividends, clearly indicated his intention as to what he meant by ordinary stock dividends when he provided: "Ordinary stock dividends paid regularly." (Italics mine). Since this ten per cent dividend was not so paid, I determine that it is an extraordinary stock dividend. In making this determination I have followed the intent of the testator as disclosed in his will. Under such circumstances I cannot follow the ordinary rule which would prevail if this intent was not so disclosed. In re Fisher, supra; Hagedorn v. Arens, supra, at page 379.
The testator provided that all extraordinary stock dividends should be allocated to principal.
I, therefore, conclude that said dividend, to wit, the ten per cent stock dividend of Eastman Kodak Company, received January 2, 1951, should be so allocated to principal.
I will enter a judgment in accordance with these conclusions.